## RINDGE COMPANY ET AL. *v.* COUNTY OF LOS ANGELES.

ERROR TO THE DISTRICT COURT OF APPEAL, SECOND APPELLATE DISTRICT, DIVISION ONE, OF THE STATE OF CALIFORNIA.

No. 237. Argued April 26, 1923.—Decided June 11, 1923.

1. Whether a use for which private property is taken is public or private is a judicial question the determination of which is influenced by local conditions; and this Court, while enforcing the Fourteenth Amendment, should keep in view the diversity of such conditions, and regard with great respect the judgments of state courts upon what should be deemed public uses. P. 705.

2. It is not essential that the entire community, or even a considerable portion, should directly enjoy an improvement in order to constitute a public use. P. 706.

3. A taking of land for a highway extension is a taking for a public use, even though the extension lie wholly within the tract of a single landowner, and terminate at his boundaries and connect with no public road save at its beginning, if it be susceptible of present use not only by those gaining access from the highway but by persons living on or adjacent to the tract with access by private ways, and of future use by those living beyond its terminus, through future road construction. P. 706.

4. A highway may be legally laid out extending to a state or county line even though there be at the time no connecting highway in

the adjoining State or county, in reasonable anticipation of future connections and future public use. P. 707.

5. Public use of a road is not limited to its use as a mere business necessity or ordinary convenience, but includes its use as a scenic highway, for the public enjoyment, recreation and health. P. 707.

6. The necessity for appropriating private property for a public use is a legislative question which may be determined by a municipality to which the legislature has delegated the power; and the Fourteenth Amendment does not entitle the owner to a hearing before the determination is made. P. 708.

53 Cal. App. 166, affirmed.

ERROR to judgments of the District Court of Appeal of California which affirmed judgments condemning private lands as county highways.

*Mr. Edward Stafford* and *Mr. Nathan Newby,* with whom *Mr. W. H. Anderson, Mr. J. A. Anderson* and *Mr. Grant Jackson* were on the briefs, for plaintiffs in error.

*Mr. Paul Vallee,* with whom *Mr. A. J. Hill* was on the brief, for defendant in error.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This record includes two cases which were tried together in the state courts and have been heard together here.

The writs of error are brought to review judgments of the District Court of Appeal affirming judgments of the Superior Court of Los Angeles County, California, condemning lands of the plaintiffs in error for use by the County as public highways; which they insist have deprived them of their property without due process of law and in violation of the Fourteenth Amendment.[1]

---

[1] After these judgments of affirmance petitions to have the cases heard and determined by the Supreme Court of California were denied by that court.

The two fundamental questions involved are whether the uses for which these lands have been taken are public uses authorized by law; and whether the taking was necessary to such uses.

Section 1241 of the California Code of Civil Procedure includes "highways" among the "public uses" for which the right of eminent domain may be exercised. Section 1241, as amended in 1913, provides that before property can be taken it must appear that the use to which it is to be applied is one authorized by law and that the taking is necessary to such use; provided, *inter alia*, that when the legislative body of a county has, by resolution adopted by vote of two-thirds of its members, found and determined that the public interest and necessity require the construction by the county of any proposed public improvement located within its limits and that designated property is necessary therefor, such resolution shall be "conclusive evidence" of the public necessity for such improvement, that such property is necessary therefor, and that such improvement is located in the manner most compatible with the greatest public good and the least private injury. Stats. 1913, p. 549.

The plaintiffs in error are the owners of a large tract of land lying on the shore of the Pacific Ocean, known as the Malibu Ranch, extending in an easterly and westerly direction about twenty-two miles and varying in width from one-half mile to one and one-half miles. It lies at the base of a high and rugged mountain range which parallels the shore at a distance of from three to four miles, its northern line extending along the slope and foothills of this mountain range, and is traversed by many ridges and intervening canyons leading from the mountains toward the shore. It lies about ten miles west of Santa Monica, one of the principal cities of Los Angeles County, situated on the coast to the southwest of the City of Los Angeles, and is mainly in Los Angeles County, but extends

about a mile and a half into Ventura County, the adjoining county on the west. It is traversed lengthwise by a private road of the ranch owners which was formerly used by farmers and settlers living north of the ranch on the slope of the mountains and west of the ranch in Ventura County, but which has been for several years closed by the ranch owners to the public.[2]

In 1916 and 1917 the Board of Supervisors, the legislative body of Los Angeles County, without notice to the ranch owners, adopted, by the required vote, two resolutions declaring that the public interest and necessity required the construction of the two highways now in controversy " for public highway purposes " and that it was necessary for such " public uses " that the lands included therein be acquired by the county; and directing that condemnation proceedings be instituted for such purposes. One of these proposed highways, which is known in the record as the " main road," commences at the eastern boundary of the ranch, where it connects with and forms a continuation of a much traveled public county highway running along the shore of the ocean from Santa Monica, and extends lengthwise through the ranch in a westerly direction to the Ventura County line, where it terminates within the boundaries of the ranch. The other is a branch from this main road, extending to the northern boundary of the ranch, where it terminates. There are no connecting public roads either at the western termination of the main road or the northern termination of the branch road.

These condemnation proceedings were thereupon instituted in the Superior Court of the County. They were

---

[2] There has been much litigation between the ranch owners and the county and federal authorities as to the public use of roads and ways across this ranch, in which, prior to these proceedings, the ranch owners have been successful. In this litigation are *United States* v. *Rindge* (D. C.), 208 Fed. 611, and *People* v. *Rindge,* 174 Cal. 743.

vigorously resisted by the ranch owners, who denied the County's right of condemnation. Certain special defenses which they interposed, alleging that the main road would furnish no way of necessity or convenience for public use or travel, were stricken out by the court. Upon a preliminary trial as to the right of condemnation, the trial judge, after the resolutions of the Board had been introduced in evidence by the County, ruled that while they were not conclusive evidence of the matters specified in the proviso to § 1241 of the Code, they were *prima facie* evidence thereof. And the ranch owners then, without objection or limitation, introduced a large mass of evidence in support of all of their defenses, including the matters which had been alleged in the special defenses that had been stricken out; and a large mass of rebuttal evidence was then introduced by the County: the testimony on both sides relating to all the matters which had been or now are in issue in the cases.

The trial judge reviewed the evidence, and, manifestly without reference to any presumption arising under his ruling as to the *prima facie* evidence furnished by the resolutions, decided all the questions submitted in favor of the County: and made specific findings that the public interest and necessity required the acquisition of these public highways; that the use to which they were to be applied was authorized by law; that they would afford accommodation to the traveling public; and that they were located as required. Thereafter, the amount of landowners' compensation and damages having been determined by a jury—as to which no question is made—judgments condemning these lands for public highways were entered.

On appeals taken by the ranch owners the District Court of Appeal held that the taking of the property for these highways was for a public use; that the proviso to § 1241 of the Code was not obnoxious to any provision of

the State or Federal Constitutions, and under it the resolutions were conclusive evidence of the matters specified; that in any event the ranch owners had not been prejudiced by the rulings of the trial court as to the effect of this proviso as they had been permitted to introduce full and complete evidence on these subjects; and that they had not been prejudiced by the striking out of their special defenses not only because the resolutions were conclusive evidence that the taking was necessary, but also because every material issue tendered by these special defenses was otherwise raised by the pleadings and they had been permitted to offer evidence touching every matter contained therein; and it thereupon sustained the findings of the trial court and affirmed the judgments of condemnation. *Los Angeles County* v. *Rindge Co.,* 53 Cal. App. 166.

The ranch owners urge here, in substance: That the use for which their property was taken was not a public use authorized by law, and their special defenses raising this question as to the main road were erroneously stricken out; that their property was taken without any public necessity, and, the proviso to § 1241 of the Code purporting to make the resolutions conclusive evidence thereof being in violation of the state constitution and of the Fourteenth Amendment and constituting neither conclusive nor *prima facie* evidence, the burden of disproving this public necessity was erroneously cast upon them; and that in consequence the judgments of condemnation deprived them of their property in violation of the due process and equal protection clauses of the Fourteenth Amendment.

1. *Authorized public use.* The nature of a use, whether public or private, is ultimately a judicial question. However, the determination of this question is influenced by local conditions; and this Court, while enforcing the Fourteenth Amendment, should keep in

view the diversity of such conditions and regard with
great respect the judgments of state courts upon what
should be deemed public uses in any State. *Fallbrook
Irrigation District* v. *Bradley,* 164 U. S. 112, 158, 160;
*Hairston* v. *Danville Railway,* 208 U. S. 598, 606, 607.
That a taking of property for a highway is a taking for
public use has been universally recognized, from time
immemorial. The California Code specifically declares
" highways " to be " public uses " for which the right of
eminent domain may be exercised. Here, the Board of
Supervisors, familiar with local conditions, has declared
these highways to be for public uses; and the local and
appellate state courts have likewise held them to be for
public uses authorized by law.

The ranch owners concede that a genuine highway, in
fact adapted as a way of convenience or necessity for pub-
lic use and travel, is a public use. Their real contention
is that these particular roads, while called highways, are
" highways " in name merely, that is, that they are shams
under the name of public improvements, which cannot,
in fact, furnish ways of convenience or necessity to the
traveling public. This argument is based upon the fact
that they extend through the ranch alone, the main road
terminating within its boundaries, and connect with no
other public roads at their western and northern ends.
These roads will, however, be open to the general public
to such extent as it can and may use them. The people
to the eastward in Santa Monica, Los Angeles and other
cities will have access to them and to the people living
on the ranch through the connecting road from Santa
Monica. The people living on the ranch will have egress
over them. The people living north of the terminus of
the crossroad, who now have no adequate outlet, will have
access to it through private roads and ways and may then
travel over these two roads to Los Angeles and other
cities for marketing produce and other purposes; and the

people in these cities will have reciprocal access to them for purposes of trade and otherwise. It is not essential that the entire community, nor even any considerable portion, should directly enjoy or participate in any improvement in order to constitute a public use. *Fallbrook Irrigation District* v. *Bradley, supra,* p. 161. In like manner, if Ventura County should hereafter extend the main road to the western end of the ranch the people living beyond it, who now have no practical outlet, would be furnished a similar means of egress, with reciprocal ingress to them by the people living in the cities to the east. A highway can be legally laid out terminating at a state line even though there be no connecting highway in the adjoining State and no definite official action has been taken to establish such connecting highway; otherwise great embarrassment and difficulty would be experienced in establishing highways across state lines. *Rice* v. *Rindge,* 53 N. H. 530, 531. So, as to county highways. Public road systems, it is manifest, must frequently be constructed in instalments, especially where adjoining counties are involved. In determining whether the taking of property is necessary for public use not only the present demands of the public, but those which may be fairly anticipated in the future, may be considered. *Central Pacific Railway* v. *Feldman,* 152 Cal. 303, 309.

But aside from these considerations, these roads, especially the main road, through its connection with the public road coming along the shore from Santa Monica, will afford a highway for persons desiring to travel along the shore to the county line, with a view of the ocean on the one side, and of the mountain range on the other, constituting, as stated by the trial judge, a scenic highway of great beauty. Public uses are not limited, in the modern view, to matters of mere business necessity and ordinary convenience, but may extend to matters of public health, recreation and enjoyment. Thus, the con-

demnation of lands for public parks is now universally
recognized as a taking for public use. *Shoemaker* v.
*United States,* 147 U. S. 282, 297. A road need not be
for a purpose of business to create a public exigency;
air, exercise and recreation are important to the general
health and welfare; pleasure travel may be accommo-
dated as well as business travel; and highways may be
condemned to places of pleasing natural scenery. *Hig-
ginson* v. *Nahant,* 11 Allen (Mass.) 530, 536. The River-
side Drive in New York is as essentially a highway for
public use as Broadway; the Speedway in this city, as
Pennsylvania Avenue. And manifestly, in these days of
general public travel in motor cars for health and recrea-
tion, such a highway as this, extending for more than
twenty miles along the shores of the Pacific at the base
of a range of mountains, must be regarded as a public use.

For these reasons we conclude that these highways will,
as found by the trial judge, afford accommodation to the
traveling public, and that the taking of land for them is
a taking for a public use authorized by the laws of Cali-
fornia.

The ranch owners were not prejudiced by the action of
the trial court in striking out their special defenses in this
behalf, since, under the general issues, they were entitled,
as held by the District Court of Appeal, and were in fact
permitted, to introduce all their evidence bearing upon
this question.

2. *Public necessity for the taking.* We necessarily ac-
cept, as a matter of state law, the holding of the District
Court of Appeal that the proviso to § 1241 of the Code
made the resolutions of the Board of Supervisors conclu-
sive evidence as to the necessity of taking these particular
highways and the other matters therein specified. So
construed it was held by that court not to be objection-
able to any provision of the State or Federal Constitu-
tions. By this we are controlled so far as the provisions

of the state constitution are concerned. *Fallbrook Irrigation District* v. *Bradley, supra,* p. 155; *Georgia Railway* v. *Decatur, ante,* 432. And so construed this statute is not in conflict with the Fourteenth Amendment, either because it fails to provide for a hearing by the landowners before such resolution is adopted, or otherwise. The necessity for appropriating private property for public use is not a judicial question. This power resides in the legislature, and may either be exercised by the legislature or delegated by it to public officers. " Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the State may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment." *Bragg* v. *Weaver,* 251 U. S. 57, 58. " That the necessity and expediency of taking property for public use is a legislative and not a judicial question is not open to discussion. . . . Neither is it any longer open to question in this Court that the legislature may confer upon a municipality the authority to determine such necessity for itself. . . . The question is purely political, does not require a hearing, and is not the subject of judicial inquiry." *Joslin Mfg. Co.* v. *Providence, ante,* 668. And, clearly, the fact that the resolutions are made conclusive evidence by the statute only when adopted by a two-thirds vote, and as applied to an improvement lying within the county, does not constitute an unjust or unreasonable classification.

And since the resolutions were conclusive evidence as to the necessity for the taking of these public highways, the ranch owners were not prejudiced by the ruling of the trial judge which treated them as *prima facie* evidence merely and allowed them full opportunity to introduce their evidence upon the subject. A litigant can

be heard to question the validity of a statute only when and in so far as it is applied to his disadvantage. *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282, 289.

We therefore conclude that the property of the ranch owners has been taken for highways constituting a public use authorized by law, and upon a public necessity for the taking duly established, and that they have not been deprived of their property in violation of the Fourteenth Amendment. The judgments of the District Court of Appeal are accordingly

*Affirmed.*

Mr. Justice Sutherland took no part in the consideration or decision of this case.