In October 1981, Joe Watt Lockridge and his three sons (hereinafter "the Lockridges"), owners of a landlocked parcel of land, petitioned the probate court pursuant to Ala. Code 1975, § 18-3-1, for the condemnation of a right-of-way across the lands of John L. Adrian and his wife, Lucille Adrian, to the nearest and most convenient public road. The landlocked property in question, situated in Cherokee County and containing approximately five acres, is bounded on the north, east, and south by the waters of Weiss Lake and on the west by the Adrians' land. The probate court denied the relief requested; the Lockridges appealed to the circuit court for a trial de novo. Both the Lockridges and the Adrians moved for summary judgments. In support of their motion for summary judgment, the Adrians asserted that Art. I, § 23, of the Alabama Constitution of 1901, and Ala. Code 1975, § 18-3-1, violated the Fifth and Fourteenth Amendments to the United States Constitution. The trial court upheld Art. I, § 23, but, finding no "public use" in the proposed condemnation of a right-of-way over the Adrians' property, the trial court declared that § 18-3-1 was unconstitutional to the extent that it permitted a taking of the Adrians' private property without their consent for the Lockridges' private use.[1] The Lockridges appeal. We reverse.
Article I, § 23, Constitution of Alabama 1901, the provision authorizing the legislature to secure for persons a right-of-way over lands of other persons upon the payment of just compensation, reads as follows:
 "[The] exercise of the right of eminent domain shall never be abridged nor so construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use in the same manner in which the property and franchises of individuals are taken and subjected; but private property shall not be taken for, or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner; provided, however, the legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein reserved; but just compensation shall, in all cases, be first made to the owner. . . ."
Pursuant to Art. I, § 23, the legislature, by general law, enacted § 18-3-1, which, at the time relevant to this case, read as follows:[2] *Page 768 
 "The owner of any tract or body of land, outside the corporate limits of a municipality, no part of which tract or body of land is adjacent or contiguous to any public road or highway, shall have and may acquire a convenient right-of-way not exceeding in width thirty feet, over the lands intervening and lying between such tract or body of land and the public road nearest or most convenient thereto."
In Harvey v. Warren, 212 Ala. 415, 102 So. 899 (1925), this Court was faced with a constitutional challenge to General Act No. 679, Acts of Alabama 1919, p. 982, the predecessor to §18-3-1. The Court upheld the act, stating:
 "The provision is contained in the Constitution of this state that the Legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide and regulate the exercise by persons and corporations of the rights reserved, etc. Section 23. Such a statute has been upheld in this court. Steele v. [County Commissioners], 83 Ala. 304, 3 So. 761 [(1888)].
". . . .
 "It has been noted that to come within the provisions of the Constitutions (state and federal) having application to the taking of private property by paying to the owner just compensation (Ala. Const. § 23; 14th Amend. to Const. of U.S.), the use to which it is to be subjected must be a recognized 'public use'. . . .
212 Ala. at 416-17, 102 So. at 900-01. (Emphasis added.)
Specifically, the interpretation from Steele v. CountyCommissioners, 83 Ala. at 305-08, 3 So. at 762-63, relied on by the Court in Harvey v. Warren, supra, for upholding the act, reads as follows:
 "The material question presented by the record involves the constitutionality of sections 1676 and 1677 of Code of 1876, which provide for and regulate the establishment of private roads.
 "The right of eminent domain antedates constitutions, and is an incident of sovereignty, inherent in, and belonging to every sovereign State. The only qualification of the right is, that the use for which private property may be taken shall be public. Section 13 of the Declaration of Rights in the constitution of 1819 declared: 'Nor shall any person's property be taken or applied to public use, unless just compensation be made therefor.' The constitution did not assume to confer the power of eminent domain, but, recognizing its existence, limited its exercise by requiring that just compensation shall be made. Under this constitutional provision it was held, that the legislature could not, with or without compensation, take private property for private use; that a private road was a private use, and that sections 1187 and 1188 of Code of 1852, which correspond with sections 1676 and 1677 of Code of 1876, were unconstitutional, so far as they undertook to confer authority to establish such road over the lands of another without his consent. Sadler v. Langham, 34 Ala. 311 [1857]. An amended or revised State constitution should be interpreted in the light of its predecessors; and when new provisions are introduced, they should be given a fair and legitimate meaning, and so construed, having regard, to their nature and purposes, as to accomplish the objects intended. In framing the constitution of 1861, the declaration of the constitution of 1819, above quoted, was retained, and a new and additional provision was introduced, which is as follows: 'Private property shall not be taken for private use, or for the use of corporations, other than municipal corporations, without the consent of the owner; but the right of way *Page 769 
may be secured by law to persons and corporations, over the land of persons and corporations; also, the right to establish depots, stations and turnouts, to works of public improvement; Provided, just compensation be made to the owner of such land.' Const., Art. III, § 30. It is manifest there was a purpose in the introduction of this new provision, which may be discovered from its nature, the circumstances under which it was introduced, and the causes thereof. These provisions were co-joined, and substantially incorporated in the constitutions of 1865 and 1868, as section 25 of the Bill of Rights; the only material alteration being, that compensation shall be made before the taking.
 "The makers of the present constitution deemed it necessary and proper to change in some respects the provisions in the constitutions next preceding, and framed section 24 of the Declaration of Rights so as to read as follows: 'That the exercise of the right of eminent domain shall never be abridged, nor so construed as to prevent the General Assembly from taking the property and franchises of incorporated companies, and subjecting them to public use the same as individuals. But private property shall not be taken or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner; Provided, however, that the General Assembly may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein secured; but compensation shall, in all cases, be first made to the owner.' It will be observed, that in respect to the power to secure to persons and corporations the right of way over the lands of other persons and corporations, the provision in the preceding constitutions is unchanged. The purposes of this section are unmistakable. It is intended to prohibit the abridgment of the exercise of the right of eminent domain, in reference to the property and franchises of corporations; to require just compensation in all cases; and to prevent private property from being taken for private use, or for the use of corporations other than municipal, without the consent of the owner, qualified by the proviso to the section. The same purposes which operated to introduce the power to secure the right of way to persons and corporations in the constitution of 1861, operated to continue it in the succeeding constitutions.
 "The authority of the court of County Commissioners to establish private roads was first conferred by the act of 1832. Under this authority, private roads had been established; and in Long v. Comm'rs, 18 Ala. 482 [1850], the proceedings for this purpose were held to be regular. No constitutional question was raised or considered, but the decision was generally considered as a silent recognition of the constitutionality of the act. When the framers of the constitution of 1861 were brought to consider the exercise of the right of eminent domain, they were faced by the decision in Sadler v. Langham, supra, holding that the legislature had no authority to confer such power, which decision was made two years previously. Having been taught by experience the imperious necessity of some power to establish private roads, so that there may be secured to the owners of lands, shut in by lands of coterminous proprietors, a way of egress and ingress [from and to] the public roads, thereby preserving and enhancing the value, promoting the owner's full and lawful use and enjoyment of his property, and serving the public interest, by putting the citizen in position to perform public services, and to remedy the consequences of the decision that the legislature had no such authority under the constitution of 1819, they introduced the provision, that the General Assembly may secure by law to individuals and corporations the right of way over the lands of other persons and corporations. The uses of some incorporated companies, such as railroads and turn-pike roads, had been pronounced public by a series of decisions, and were so understood when the constitution was adopted. The power to secure the right of *Page 770 
way applies to persons and corporations without discrimination, and the effect is to put both in the same class in respect to the character of the use. The proviso in the section of the constitution serves the natural and appropriate office of restraining or qualifying the preceding general provisions; and its operation is to except the right of way over the lands of persons and corporations from the general prohibition against taking private property for private use, by impliedly declaring the same to be a public use. The conclusion is, that the legislature may provide for the establishment of private roads, and that private property, to the extent of the right of way, may be taken for such purpose, upon just compensation being first made, and that the enactment of sections 1676 and 1677 is a constitutional exercise of the power. — Scherr v. Detroit, 45 Mich. 626 [8 N.W. 578]."
(Emphasis added.) See, also, Johnston v. Alabama Public ServiceComm'n, 287 Ala. 417, 252 So.2d 75 (1971) (holding that §18-3-1 does not violate Art. I, § 23, or the 14th Amendment to the United States Constitution).
The trial court in the present case correctly recognized that even a compensated taking of property when executed for no reason other than to confer a private benefit on a particular private party is unconstitutional under both the Alabama Constitution and the United States Constitution. See, e.g.,Harvey v. Warren, supra; Steele v. County Commissioners, supra;Hawaii Housing Authority v. Midkiff, 467 U.S. 229,104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); and 2A Nichols, The Law of EminentDomain §§ 7.01-7.73 (3d ed. 1990). In Hawaii Housing Authorityv. Midkiff, the Hawaii Legislature enacted the Land Reform Act of 1967 ("the Act"), which created a land condemnation procedure whereby title to real property was taken from lessors and transferred to lessees in order to reduce the concentration of land ownership on the islands. The Hawaii Legislature concluded that such drastic legislation was necessary, based on its finding that concentrated land ownership was skewing the state's residential fee simple market, inflating land prices, and injuring the public tranquility and welfare. Rejecting a challenge to the Act based on the Fifth Amendment's Eminent Domain Clause and on Due Process provisions, the United States Supreme Court held:
 "To be sure, the Court's cases have repeatedly stated that 'one person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid.' Thompson v. Consolidated Gas Corp., 300 U.S. 55, 80 [57 S.Ct. 364, 376, 81 L.Ed. 510] (1937). See, e.g., Cincinnati v. Vester, 281 U.S. 439, 447 [50 S.Ct. 360, 362, 74 L.Ed. 950] (1930); Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 251-252 [25 S.Ct. 251, 255-256, 49 L.Ed. 462] (1905); Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 159
[17 S.Ct. 56, 63, 41 L.Ed. 369] (1896). Thus, in Missouri Pacific R. Co. v. Nebraska, 164 U.S. 403
[17 S.Ct. 130, 41 L.Ed. 489] (1896), where the 'order in question was not, and was not claimed to be, . . . a taking of private property for a public use under the right of eminent domain,' id., at 416 [17 S.Ct. at 135] (emphasis added), the Court invalidated a compensated taking of property for lack of a justifying public purpose. But where the exercise of the eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause. See Berman v. Parker, [348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954)]; Rindge Co. v. Los Angeles, 262 U.S. 700 [43 S.Ct. 689, 67 L.Ed. 1186] (1923); Block v. Hirsh, 256 U.S. 135
[41 S.Ct. 458, 65 L.Ed. 865] (1921); cf. Thompson v. Consolidated Gas Corp., supra (invalidating an uncompensated taking).
". . . .
 "The mere fact that property taken outright by eminent domain is transferred in the first instance to private beneficiaries does not condemn that taking as having only a private purpose. The Court long ago rejected any literal requirement that condemned property be put into use for the general public. 'It is not essential that the entire community, nor even any considerable *Page 771 
portion, . . . directly enjoy or participate in any improvement in order [for it] to constitute a public use.' Rindge Co. v. Los Angeles, 262 U.S., at 707 [43 S.Ct. at 692]. '[W]hat in its immediate aspect [is] only a private transaction may . . . be raised by its class or character to a public affair.' Block v. Hirsh, 256 U.S., at 155
[41 S.Ct. at 459]. As the unique way titles were held in Hawaii skewed the land market, exercise of the power of eminent domain was justified. The Act advances its purposes without the State's taking actual possession of the land. In such cases, government does not itself have to use property to legitimate the taking; it is only the taking's purpose, and not its mechanics, that must pass scrutiny under the Public Use Clause.
 "Similarly, the fact that a state legislature, and not the Congress, made the public use determination does not mean that judicial deference is less appropriate. Judicial deference is required because, in our system of government, legislatures are better able to assess what public purposes should be advanced by an exercise of the taking power. State legislatures are as capable as Congress of making such determinations within their respective spheres of authority. See Berman v. Parker, 348 U.S., at 32
[75 S.Ct. at 102]. Thus, if a legislature, state or federal, determines there are substantial reasons for an exercise of the taking power, courts must defer to its determination that the taking will serve a public use.
". . .
 "The State of Hawaii has never denied that the Constitution forbids even a compensated taking of property when executed for no reason other than to confer a private benefit on a particular private party. A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void. But no purely private taking is involved in these cases. The Hawaii Legislature enacted its Land Reform Act not to benefit a particular class of identifiable individuals but to attack certain perceived evils of concentrated property ownership in Hawaii — a legitimate public purpose. Use of the condemnation power to achieve this purpose is not irrational. Since we assume for purposes of these appeals that the weighty demand of just compensation has been met, the requirements of the Fifth and Fourteenth Amendments have been satisfied."
467 U.S. at 241-45, 104 S.Ct. at 2329-2331. (Emphasis in original.)
However, the trial court in the present case erred in holding that § 18-3-1 was unconstitutional to the extent that it permits the taking of private property to establish a private easement by necessity. As this Court explained in Steele v.County Commissioners, and as the United States Supreme Court explained in Hawaii Housing Authority v. Midkiff, the taking of private property for a private use is constitutional provided that there exists a valid public purpose for the taking. There is no "literal requirement that condemned property be put into use for the general public," Midkiff, 467 U.S. at 244,104 S.Ct. at 2331; it is only the purpose of the taking that must pass constitutional scrutiny, and a state's assessment as to what public purposes should be advanced by the exercise of the taking power is entitled to substantial deference by the courts. Midkiff. The public purpose advanced by § 23 of the Alabama Constitution, which § 18-3-1 was enacted to implement, was adequately stated in Steele v. CountyCommissioners:
 "Having been taught by experience the imperious necessity of some power to establish private roads, so that there may be secured to the owners of lands, shut in by lands of co-terminous proprietors, a way of egress and ingress [from and to] the public roads, thereby preserving and enhancing the value, promoting the owner's full and lawful use and enjoyment of his property, and serving the public interest, by putting the citizen in position to perform public services . . ., [the framers of the Constitution of 1861] introduced the provision, that the General Assembly may secure by law to individuals and corporations *Page 772 the right of way over the lands of other persons and corporations."
83 Ala. at 307, 3 So. at 763.
For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
STEAGALL, J., concurs specially.
[1] The trial court determined Alabama Power Company to be a necessary and indispensable party and ordered its joinder. However, Alabama Power is not a party to this appeal.
[2] We quote here § 18-3-1 as it read before July 8, 1982; that version of the statute applies in this case. That pre-July 8, 1982, version refers to land "outside the corporate limits of a municipality." Section 18-3-1 was amended by Alabama Acts 1982, 2d Ex.Sess., Act No. 82-784, p. 288, to delete any reference to land "outside the corporate limits of a municipality"; that 1982 amendment added the language "provided written approval is obtained from the municipal government and the planning board of such municipality." The 1982 amendment thereby seems to restrict the application of the statute to land within the corporate limits of a municipality. After the 1982 amendment, the section reads:
 "The owner of any tract or body of land, no part of which tract or body of land is adjacent or contiguous to any public road or highway, shall have and may acquire a convenient right-of-way, not exceeding in width 30 feet, over the lands intervening and lying between such tract or body of land and the public road nearest or most convenient thereto provided written approval is obtained from the municipal government and the planning board of such municipality."
The Court of Civil Appeals interpreted the amended provision inHawkins v. Griffin, 512 So.2d 109, 110-11 (Ala.Civ.App. 1987):
 "Although inartfully drafted, section 18-3-1, Code 1975, as amended, appears to be the result of an effort by the legislature to permit those landowners within the boundaries of municipalities who have no access to a public road or street to condemn private rights-of-way just as landlocked landowners outside municipalities are permitted to so condemn. . . .
 "After giving [§ 18-3-1, as amended in 1982,] a rational, sensible, and liberal constraction, we conclude that the legislature intended to permit landlocked owners in municipalities to obtain private rights-of-way over the lands of others to the nearest public road or street and did not intend to deprive landlocked owners outside municipalities of the same right, which they had possessed for many years."
We think the Court of Civil Appeals correctly interpreted the 1982 Amendment.