[No. S132251. Feb. 22, 2007.]

MT. SAN JACINTO COMMUNITY COLLEGE DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
AZUSA PACIFIC UNIVERSITY, Real Party in Interest.

---

**COUNSEL**

Redwine and Sherrill, Justin M. McCarthy, David F. Hubbard, Steven B. Abbott, Scott R. Heil; Atkinson, Andelson, Loya, Rudd & Romo and John W. Dietrich for Petitioner.

Myers, Widders, Gibson, Jones & Schneider and Katherine E. Stone for League of California Cities, California State Association of Counties and Metropolitan Water District of Southern California as Amici Curiae on behalf of Petitioner.

Bruce A. Behrens, Thomas C. Fellenz and Richard B. Williams for The People of the State of California, acting by and through the Department of Transportation, as Amicus Curiae on behalf of Petitioner.

California Eminent Domain Law Group and Arthur J. Hazarabedian for Los Angeles Unified School District and The Education Alliance of the California School Board Association as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Manatt, Phelps & Phillips, George M. Soneff and Michael M. Berger for Real Party in Interest.

Sedgwick, Detert, Moran & Arnold, Gregory H. Halliday, Geoffrey K. Willis and Gregory E. Woodward for Transcan Riverside LLC as Amicus Curiae on behalf of Real Party in Interest.

James S. Burling for Pacific Legal Foundation as Amicus Curiae on behalf of Real Party in Interest.

## Opinion

**CHIN, J.**—When the government exercises its power of eminent domain, and condemns or damages private property for public use, it must pay "just compensation" to the owner. (Cal. Const., art. I, § 19.)[1] The just compensation is aimed at making the landowner whole for a governmental taking or damage to the owner's property. (*Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 797 [214 Cal.Rptr. 904, 700 P.2d 794] (*Gilmore*); see *Escondido Union School Dist. v. Casa Suenos De Oro, Inc.* (2005) 129 Cal.App.4th 944, 958 [29 Cal.Rptr.3d 89] (*Escondido*).) In other words, " 'the owner is constitutionally entitled [to] the *full and perfect* equivalent of the property taken.' " (*Gilmore, supra,* 38 Cal.3d at pp. 796–797, quoting *Seaboard Air Line Ry. v. U. S.* (1923) 261 U.S. 299, 304 [67 L.Ed. 664, 43 S.Ct. 354] (*Seaboard*).)

■ California's statutory Eminent Domain Law (Code Civ. Proc., § 1230.010 et seq.)[2] provides that if the compensation issue "is brought to trial within one year after commencement of the proceeding, the date of [property] valuation is the date of commencement of the proceeding." (§ 1263.120.) The condemner may, however, take early possession of the property before litigation is concluded "upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation." (Cal. Const., art. I, § 19; see § 1255.410.) The immediate possession procedure is also known as a "quick-take" eminent domain action. (*Escondido, supra,* 129 Cal.App.4th at p. 960.) Because compensation is immediately available to the property owner in a quick-take action, the date of valuation of the property is statutorily required to be no later than the date the condemner deposits "probable compensation" for the owner. (§ 1263.110 et seq.) The deposit earns statutory interest until it is withdrawn. (§ 1268.310.) The property owner can immediately withdraw the funds, but by doing so waives all rights to dispute the taking other than the right to challenge the amount of just compensation. (§ 1255.260.)

This case involves a quick-take eminent domain action. We address two constitutional issues. First, does a statutory property valuation date that occurs at the time the condemner deposits the probable compensation in court

---

[1] Article I, section 19 of the California Constitution provides that "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation." (See also U.S. Const., 5th Amend. [private property shall not "be taken for public use without just compensation"].)

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

under section 1263.110 et seq. deny the property owner just compensation under the California Constitution when litigation in the eminent domain action is not expected to end until several years after the deposit is made? Second, is the owner's statutory waiver of rights after withdrawing the funds an unconstitutional condition on the statutorily required "prompt release" of the deposit?

■ We conclude that the statutory date of valuation at the time the probable compensation is deposited is constitutional, and that the requirement of a waiver of claims and defenses for receipt of deposited probable compensation is constitutional. We therefore affirm the Court of Appeal's judgment.

## FACTS AND PROCEDURAL HISTORY

The facts are summarized from the Court of Appeal opinion and the record. In October 2000, Mt. San Jacinto Community College District (the District) commenced an eminent domain action against Azusa Pacific University (the University), seeking to condemn approximately 30 acres of vacant land in Riverside County. On December 15, 2000, the District deposited $1.789 million into court as probable compensation for the property. In October 2001, the District applied for a prejudgment order for possession. The trial court granted the application effective upon the University's completion of improvements to the property.[3] The District took possession of the property in January 2002. The University did not move to stay the order for possession on hardship grounds or pending the trial court's adjudication of the District's right to take the property. In addition, the University did not withdraw any portion of the deposited funds.

In February 2002, the University petitioned the court to increase the deposit of probable compensation from $1.789 million to $4.2 million. The

---

[3] The University began constructing the improvements (educational facilities) in May 2001, after summons was served in this eminent domain action. Section 1263.240 provides that improvements made after the date the summons is served "shall not be taken into account in determining compensation" unless, for example, the improvements are made with the plaintiff's written consent or are authorized by court order. (§ 1263.240, subds. (b) & (c).) The University did not obtain the District's written consent and did not seek advance court approval before constructing the improvements as required under the statute. Therefore, the trial court found that the University could not recover the value of the improvements. The University filed a separate inverse condemnation action seeking the value of the improvements, but the Court of Appeal issued a writ directing the trial court to enter summary judgment in the District's favor. (*Mt. San Jacinto Community College Dist. v. Superior Court* (2004) 117 Cal.App.4th 98, 110 [11 Cal.Rptr.3d 465].) The court reasoned that the University could not recover on the improvements because it failed to seek advance court approval for them in the present eminent domain action, as required under section 1263.240. (117 Cal.App.4th at p. 110.)

University argued that the property was worth $4.2 million when the deposit was made in December 2000. The trial court determined that the amount of probable compensation on December 15, 2000, was $1.789 million, and denied the University's petition.

The trial court bifurcated the issues of the District's right to take possession of the property and the amount of just compensation. The court ruled in June 2002 that the District had the right to take the property.

The parties filed cross-motions in limine to determine the date of valuation before trial. The trial court recommended they seek a ruling from the appellate court, as there was a "controlling question of law as to which there are substantial grounds for difference of opinion." The University petitioned the Court of Appeal for a writ of mandate requesting the court resolve the issue. The Court of Appeal denied the petition without prejudice, stating that the question of whether the statutory date of valuation should be disregarded was dependent on the facts of the case, and that the record was "not sufficiently developed" to allow the court to rule. Following further briefing by the parties, the trial court ruled that the property should be valued as of the date trial commenced—December 6, 2004. The District then petitioned the Court of Appeal for a writ of mandate directing the trial court to vacate its order and enter a new order setting the valuation date on December 15, 2000.

The Court of Appeal initially observed that "[u]pon further consideration of [the] issues, we conclude that the issues raised in [the University's] prior petition, and in [the District's] present petition, are questions of law which did not, as we previously stated, require further development of the record." The court then compared the valuation principles that apply in a quick-take proceeding with those in a straight condemnation action, in which no deposit of probable compensation is made and immediate possession is not sought. The court observed that the statutory valuation rules reflect the principle that a taking occurs when the property owner is paid. Applying this principle to a quick-take proceeding, the court reasoned that the property should be valued on the date the plaintiff makes the probable compensation available to the owner by depositing it with the court.

The Court of Appeal acknowledged, however, that the valuation must satisfy constitutional requirements. The court considered the University's contention that the principle of just compensation entitled it to the property's value as of the date of the compensation trial, not the date of the deposit. The University argued that because section 1255.260 required it to waive its right

to litigate the legality of the taking if it availed itself of the deposited funds, the University was effectively precluded from withdrawing the deposited funds. Therefore, the University argued, the property should be valued at the time of the commencement of trial. The Court of Appeal found that the University received just compensation on the date of deposit, despite the requirement that it waive its statutory defenses if it withdrew the funds. The court issued an alternative writ, granting the District's petition, and directing the trial court to set the date of valuation as of December 15, 2000. The University now challenges the date of valuation (§ 1263.110) and the waiver of claims and defenses (§ 1255.260) as unconstitutional.

## DISCUSSION

■ There is a "strong presumption in favor of the Legislature's interpretation of a provision of the Constitution." (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 692 [97 Cal.Rptr. 1, 488 P.2d 161].) " 'When the Constitution has a doubtful or obscure meaning or is capable of various interpretations, the construction placed thereon by the Legislature is of very persuasive significance.' " (*Methodist Hosp., supra*, 5 Cal.3d at p. 693.) " 'For the purpose of determining constitutionality, we cannot construe a section of the Constitution as if it were a statute, and adopt our own interpretation without regard to the legislative construction.' " (*Ibid.*, quoting *Pacific Indemnity Co. v. Indus. Acc. Com.* (1932) 215 Cal. 461, 464 [11 P.2d 1].) We therefore must consider the Legislature's construction of the pertinent constitutional provisions.

### A. *Development of Quick-take Procedure*

As adopted in 1879, the California Constitution provided only that "[p]rivate property shall not be taken or damaged for public use without just compensation having been first made . . . ." (Cal. Const., art. I, former § 14, repealed Nov. 5, 1974.) No constitutional provision allowed prejudgment possession. Instead, it was statutorily provided under former section 1254 that a condemner could take possession of the land as the condemnation proceeding was pending if it deposited probable compensation into court. Under the statute, the defendant was allowed to "apply to the court for the money," but the condemner could take possession even without the court approving the payment. (*Steinhart v. Superior Court* (1902) 137 Cal. 575, 576 [70 P. 629] (*Steinhart*).)

*Steinhart* considered the constitutionality of this early possession provision. As the Constitution at the time required that just compensation must have "first [been] *made*," the court held that a preliminary possession "cannot be authorized until the damage . . . has been judicially determined and the amount has been paid or tendered to the owner." (*Steinhart, supra,* 137 Cal. at p. 578, italics omitted.) As the owner could not immediately withdraw the funds, nor had the amount of compensation yet been decided by a jury, the deposit statute was declared unconstitutional. (*Id.* at pp. 578–579.)

In response to the *Steinhart* decision, California voters amended the Constitution to authorize certain public agencies to take immediate possession of the condemned property without first making payment to the owner. (See Taking Possession and Passage of Title in Eminent Domain Proceedings (Oct. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. B-10 (Commission Report).) Owners had no right to withdraw the money,[4] and were left to "vacate the property, locate new property to replace that taken and move to the new location at a time when there [was] little or no money available from the condemnation." (*Id.* at p. B-7.)

In 1956, the California Law Revision Commission (Commission) was authorized to study whether condemnation law should be revised to better safeguard private property rights. (Com. Rep., *supra,* at p. B-1.) Its findings were incorporated into Proposition 7, which was passed by the voters in 1974. (*Gates v. Superior Court* (1995) 32 Cal.App.4th 481, 522–523 [38 Cal.Rptr.2d 489].) Proposition 7 repealed and replaced the former just compensation clause in article I, section 14 of the California Constitution with the current clause in article I, section 19.

The Commission concurrently recommended revision of a number of statutory measures relating to eminent domain and the right to immediate possession. (Com. Rep., *supra,* at pp. B-12 to B-25.) The Legislature enacted many of these recommendations into law. (See *People ex rel. Dept. of Transportation v. Southern Cal. Edison Co.* (2000) 22 Cal.4th 791, 799–800 [94 Cal.Rptr.2d 609, 996 P.2d 711]; *Miro v. Superior Court* (1970) 5 Cal.App.3d 87, 99–100 [84 Cal.Rptr. 874].)

The Commission concluded that a constitutional amendment was necessary, as "the policy underlying the *Steinhart* decision and the original provisions of the 1879 Constitution is sound and the contrary policy of the present

---

[4] If the property was taken for highway purposes, it was provided that the owner could withdraw 75 percent of the deposit. (See Com. Rep., *supra,* at p. B-7.)

provisions of the Constitution [under article I, former section 14] is undesirable." (Com. Rep., *supra*, at p. B-10.) Under former article I, section 14, an owner had no assurance he or she would actually receive compensation at the time the property taking occurred. "A person's property should not be taken from him unless he has the right to be paid concurrently for the property, for it is at the time of the taking that he must meet the expenses of locating and purchasing property to replace that taken and of moving to the new location." (Com. Rep., *supra*, at p. B-10.) The Commission recommended that the condemnee be allowed to withdraw the entire deposit when the condemner takes actual possession of the property. (*Id.* at p. B-7.)

The Commission reasoned that immediate possession proceedings were more beneficial to both condemners and owners than straight condemnations. The public interest would be promoted by shortening the delay between the beginning of the condemnation proceeding and the actual taking of possession. "While the need for public improvements of all kinds has become increasingly clear, the construction of these improvements has often been delayed for excessive periods of time, largely because of the inability of the condemnor to expedite the taking of possession." (Com. Rep., *supra*, at p. B-29.) These delays resulted in an increase in the cost of the development, which in turn led to increased taxes. (*Ibid.*) Because bond issues finance many developments, "the inability to take immediate possession may cause inability to meet the bonding requirements and, consequently, may not only retard but completely prevent the construction of the improvement." (*Ibid.*, fn. omitted.)

The Commission also observed that, "Upon commencement of condemnation proceedings, a landowner is deprived of many of the valuable incidents of ownership. He can no longer place improvements upon the property for which he may be compensated. He is practically precluded from selling or renting the property for few persons wish to purchase a law suit." (Com. Rep., *supra*, at p. B-12.) In ordinary condemnation proceedings, the owner received no compensation until the end of litigation. (*Ibid.*) The Commission proposed that in quick-take or immediate possession proceedings, the owner should have the right to withdraw compensation when the condemner actually takes possession of the property, and therefore have the money available immediately to use when planning for the future.[5] (*Id.* at p. B-12.)

---

[5] The Commission also examined the effect these changes would have on an owners' right to challenge the taking. It reasoned that "[t]he right of the condemner to take the property is rarely disputed" and "the only question for judicial decision in virtually all condemnation actions is the value of the property." (Com. Rep., *supra*, at p. B-11.) Under the former law, "many vitally needed public improvements [were] delayed even though there [was] no real issue in the case of the public's right to take the property." (*Id.* at p. B-12.) "If the property

The Commission suggested few alterations to the waiver provision when it proposed the aforementioned constitutional and statutory changes, recommending only that former section 1254.7 be amended and renumbered as (former) section 1243.7, and that the waiver of claims and defenses in subdivision (g) be retained.[6] (Com. Rep., *supra*, at pp. B-15 to B-16.) The Legislature followed this recommendation and retained the waiver provision when it enacted former section 1243.7. (Stats. 1961, ch. 1613, § 4, pp. 3444, 3446.)

The Commission later discussed the proper date of valuation. Before 1974, the rule had been to value the property as of the date the summons was issued. (Recommendation: Eminent Domain Law (Oct. 1974) 12 Cal. Law Revision Com. Rep. (1974) pp. 1605, 1645–1646 (1974 Commission Report).) The Commission again noted the condemning agency's need for certainty: "In acquiring property for public use, it is frequently essential that there be a definite future date as of which all property needed for the public improvement will be available. An undue delay in acquiring even one essential parcel can prevent construction of a vitally needed public improvement and can complicate financial and contractual arrangements for the entire project. . . . In general, the need of the condemnor is not for haste but for certainty in the date of acquisition. The variable conditions of court calendars and the unpredictable period required for the trial of the issue of compensation preclude any certainty in the date of acquisition if that date is determined solely by entry of judgment in the proceeding." (*Id.* at p. 1658.)

The Commission considered the "oft-made proposal" that the date of valuation should be the date trial commences in all cases. (1974 Com. Rep., *supra*, at p. 1645.) "It would seem more appropriate to ascertain the level of the general market and the value of the particular property in that market at the time the exchange of the property for 'just compensation' actually takes place. Also, in a rapidly rising market, property values may have increased so much that the property owner cannot purchase equivalent property when he eventually receives the award. . . . Nonetheless, the existing California rules

---

owner can be insured just compensation, there is little, if any, justification for delaying public improvements and, thereby, increasing the tax burden on the public." (*Id.* at p. B-29.)

[6] California owners wishing to withdraw compensation have been required to waive claims and defenses, with the exception of a claim for greater compensation, since 1897. When the Legislature amended former section 1254 to authorize prejudgment possession after a deposit was made, this section contained a provision that a withdrawal waived all claims and defenses except a claim for greater compensation. (Stats. 1897, ch. 127, § 1, p. 186.) While that statute was struck down in *Steinhart*, it was not due to the waiver provision, but because compensation was neither determined by a jury nor available for immediate withdrawal by the owner. (*Steinhart, supra*, 137 Cal. at pp. 578–579.)

appear to have worked equitably in most cases. The alternative rule might provide an undesirable incentive to condemnees to delay the proceedings to obtain the latest possible date of valuation. And, as a matter of convenience, there is merit in fixing the date of valuation as of a date certain, rather than by reference to the uncertain date that the trial may begin." (*Id.* at pp. 1645–1646, fn. omitted.) The Commission recommended retention of the existing rule. "In addition to providing a needed incentive to condemnors to deposit approximate compensation, the rule would accord with the view that the property should be valued as of the time payment is made. . . . A date of valuation thus established should not be subject to change by any subsequent development in the proceeding." (*Id.* at p. 1646.)

■ Procedural safeguards under current eminent domain laws ensure the deposit closely approximates the amount that a jury would actually award, and the owner is guaranteed a jury trial on the award amount if requested. (Cal. Const., art. I, § 19.) The owner's constitutional right to receive just compensation for the property " 'cannot be made to depend upon state statutory provisions.' " (*Gilmore, supra,* 38 Cal.3d at p. 797, citing *Seaboard, supra,* 261 U.S. at p. 306; see also *Kirby Forest Industries, Inc. v. United States* (1984) 467 U.S. 1, 17 [81 L.Ed.2d 1, 104 S.Ct. 2187] (*Kirby*).) The Legislature does have the power to place additional restrictions on the exercise of eminent domain. (*Saratoga Fire Protection Dist. v. Hackett* (2002) 97 Cal.App.4th 895, 905–906 [118 Cal.Rptr.2d 696] (*Saratoga*); see also *Kelo v. New London* (2005) 545 U.S. 469, 489 [162 L.Ed.2d 439, 125 S.Ct. 2655] [" 'Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch' "].) The Legislature has incorporated a number of these restrictions into its statutory scheme. (See *City of Oakland v. Oakland Raiders* (1982) 32 Cal.3d 60, pp. 64–65, 69 [183 Cal.Rptr. 673, 646 P.2d 835].) But state and federal statutory provisions have been invalidated when necessary to ensure just compensation to the owner. (See, e.g., *Kirby, supra,* 467 U.S. 1; *Gilmore, supra,* 38 Cal.3d 790; *Saratoga, supra,* 97 Cal.App.4th at pp. 905–906.)

■ The statutory procedural safeguards in place today include a property appraisal requirement. (§ 1255.010.) A recent statute requires the condemner to offer to pay the reasonable costs (up to $5,000) of an independent appraisal that the property owner orders at the time the condemner offers to take the property. (§ 1263.025, subd. (a).) Once the deposit is made, the owner may petition the court to "determine or redetermine" whether it equals the probable compensation that will be awarded. (§ 1255.030, subd. (a).) If the

deposit does not meet the amount of probable compensation and is not increased within the time allowed, the deposit is void and will not be used to determine the date of valuation. (§ 1263.110, subd. (b).)

### B. *University's Contentions*

As discussed *ante,* at page 653, section 1263.110 would require that the University's property be valued on the date of deposit, or December 15, 2000. The University asserts that due to fluctuations in the real estate market, using the deposit date as the valuation date would deny its constitutional right to just compensation. The University's point is that if a property owner chooses to challenge the condemner's right to take the property, the condemner can set an early valuation date by depositing funds, "and then reap the benefit of a large rise in property values when the valuation trial does not occur for several years (while retaining the option to abandon the action if values fall)." The University claims the date of valuation should be the date trial on the just compensation issue commenced, even though the District deposited the probable compensation on December 15, 2000. The University's contention is based on the fact that the parties agree that the property has increased in value since the date of the deposit.

The University relies on *Saratoga* to assert that the statutory date of valuation must be invalidated in this case. (*Saratoga, supra,* 97 Cal.App.4th at pp. 905–906.) *Saratoga* involved a straight condemnation proceeding where the Court of Appeal held that section 1263.120 was unconstitutional as applied. (*Saratoga, supra,* 97 Cal.App.4th at pp. 905–906.) In *Saratoga,* trial on the compensation issue began 11 months after the date the proceeding commenced, during which time the fair market value of the property increased from $2 million to $3.2 million. (*Id.* at pp. 897–898.) Even though section 1263.120 required the property be valued as of the date the proceeding commenced, *Saratoga* held the principal of just compensation required it be valued on the date of trial. (97 Cal.App.4th at pp. 897–898.)

As the Court of Appeal here stated, it is of critical importance that *Saratoga* was a straight condemnation proceeding where there was no deposit of probable compensation before trial. In order to provide just compensation, the court in *Saratoga* had to value the property closer to when payment would finally be made available to the owner. Section 1263.120 had to be disregarded to ensure the owner received just compensation at the time payment was tendered and the property was actually taken.

In contrast to the condemner in *Saratoga*, the District here deposited the probable amount of compensation well before the start of trial. As noted, the University had the option to withdraw the funds at that time. (§ 1255.210.) The deposit was supported by an appraisal, as required under section 1255.010. Indeed, when the University made a motion under section 1255.030 to increase the amount of the deposit, the trial court found that the amount deposited was sufficient. When recommending the law, the 1960 Commission wanted to ensure that the owner had the right to withdraw compensation when the condemner actually takes possession of the property. (Com. Rep., *supra*, at p. B-12.) The University had this right but did not exercise it.

The University's comparisons to *Kirby*, another straight condemnation proceeding, are similarly misplaced. (*Kirby*, *supra*, 467 U.S. at pp. 16–17.) In *Kirby*, the condemned property was valued at trial in 1979, yet the deposit was not made until 1982. (*Id.* at p. 16.) The owner retained the rights to sell the land or profit from it during that three-year period. (*Id.* at pp. 14–15.) The court held that a condemnation award must be modified "when there is a substantial delay between the date of valuation and the date the judgment is paid, during which time the value of the land changes materially." (*Id.* at p. 18.)

No credible reason exists to invalidate the statutory date of valuation here, when a deposit was made before trial and the owner had access to the money at that time.

The fact that the 1974 Commission specifically rejected using the date of trial as the date of valuation in quick-take proceedings is significant. Although it considered the possibility of the issue before us today (see 1974 Com. Rep., *supra,* at p. 1645 ["in a rapidly rising market, property values may have increased so much that the property owner cannot purchase equivalent property when he eventually receives the award"]), the Commission emphasized the public need for certainty when valuing land for condemnation proceedings. A date of valuation based on a variable date of trial would not provide this certainty. In addition, the Commission observed that a rule valuing property on the date trial commenced "might provide an undesirable incentive to condemnees to delay the proceedings to obtain the latest possible date of valuation." (*Id.* at pp. 1645–1646.) We agree with the Commission's observation. If the date of valuation could be delayed until the date of trial, owners in a rising market would have a considerable incentive to delay proceedings for as long as possible to ensure a greater return on their property.[7]

---

[7] The University's contention that the Court of Appeal ignored *Saratoga, supra,* 97 Cal.App.4th 895, and its determination that an owner must be allowed to prove that the statutory scheme does not provide adequate compensation under the facts of a particular case is

## C. *The Waiver of Claims and Defenses*

Section 1255.260 provides: "If any portion of the money deposited pursuant to this chapter is withdrawn, the receipt of any such money shall constitute a waiver by operation of law of all claims and defenses in favor of the persons receiving such payment except a claim for greater compensation." This waiver includes the right to contest the condemner's right to take the property. (*Clayton v. Superior Court* (1998) 67 Cal.App.4th 28, 33 [78 Cal.Rptr.2d 750].)

The University contends that even though the District made a deposit here, and the University did not withdraw the money, the deposited amount was effectively rendered unavailable because the University could not withdraw it without waiving its right to fully and finally litigate the condemner's right to take the property. Thus, the University claims it is left without either the property or the deposit, an unconstitutional choice. The University contends that this aspect of the Legislature's quick-take process violates article I, section 19, and allows the government to take possession of the property while withholding the deposit from the property owner, thus violating the governing principle of eminent domain proceedings: financial equivalency. The University asserts that in order to avoid this "Catch-22" situation, we should value the property on the date of trial, not the date of the deposit. We disagree.

The University initially looks to *Steinhart* for support. Specifically, it relies on the court's observation that in an immediate possession proceeding, the money must be deposited into court "for the owner," and that this has not happened until the owner can actually take it. (*Steinhart, supra,* 137 Cal. at p. 579.)

When *Steinhart* was decided, the California Constitution stated that "[p]rivate property shall not be taken or damaged for public use without just compensation having been first made . . . ." (Cal. Const., art. I, former § 14, repealed Nov. 5, 1974.) The parties in that case were governed by former article I, section 14, which did not authorize a condemner to take immediate possession before trial or to deposit the likely amount of just compensation. In *Steinhart*, a statute allowed a condemner to take possession before trial if it had made a deposit, but did not allow the owner to withdraw the funds.

---

without merit. The court did not establish an inflexible rule requiring that the issue of the proper valuation be resolved as a matter of law, and clearly considered the facts in determining the date of valuation here.

(*Steinhart, supra,* 137 Cal. at p. 576.) The court declared that statute unconstitutional under former article I, section 14, as just compensation had not "first [been] made" if the owner could not withdraw the deposit. (*Steinhart, supra,* 137 Cal. at pp. 578–579, italics omitted.)

*Steinhart* is inapposite. As previously discussed, the 1974 enactment of article I, section 19 of the state Constitution authorizes the Legislature to provide for prejudgment possession by the condemner upon deposit in court and prompt release to the owner of its probable compensation. (Art. I, § 19.) In addition, unlike the applicable statute in *Steinhart*, an owner under the present statutory scheme has the ability to withdraw the deposit soon after it is made. (§§ 1255.210–1255.240.)

■ The only constitutional limitations on the right of eminent domain are that the taking be for a public use, and that just compensation be paid. (*City of Oakland v. Oakland Raiders, supra,* 32 Cal.3d at p. 64; *People v. Chevalier* (1959) 52 Cal.2d 299, 304 [340 P.2d 598].) ■ "A litigant can be heard to question the validity of a statute only when and in so far as it is applied to his disadvantage." (*Rindge Co. v. Los Angeles* (1923) 262 U.S. 700, 709–710 [67 L.Ed. 1186, 43 S.Ct. 689].) The University does not claim that the condemnation is not for a public use. In addition, section 1255.260 does not require waiving a claim for greater compensation with withdrawal of the deposit. Thus, the University is not being forced to waive a constitutional right.

As the Court of Appeal recognized, the University's argument has been advanced and rejected in several cases. In *Pacific Gas & Electric Co. v. Superior Court* (1973) 33 Cal.App.3d 321 [109 Cal.Rptr. 10] (*PG&E*), the condemner made a deposit after trial on the compensation issue. The owner appealed, and the condemner sought an order for possession pending the appeal. (*Id.* at p. 324.) The owner argued that allowing the condemner to take possession pending the appeal would deprive it of just compensation, since it could not withdraw the deposited funds without waiving its right to a final adjudication on appeal of the condemner's right to take the property. (*Id.* at pp. 324–329.)

■ The court disagreed. The deposit of funds satisfied the owner's right to just compensation at the time of the taking, that is, at the time the condemner had a right to take possession following judgment. (*PG&E, supra,* 33 Cal.App.3d at p. 327.) "The fact that statutory limitations or conditions are imposed upon a property owner's ability to withdraw [deposited] funds in

relation to his exercise of his solely statutory right to appeal, does not operate so as to constitute a denial of just compensation." (*Ibid.*) The same reasoning applies here. The condemner had a right to immediate possession of the property, and made a deposit of probable compensation. The owner had the right immediately to withdraw that deposit. The existence of conditions on withdrawal on the owner's solely statutory right to further litigate the legality of the taking does not deny the owner just compensation.

*PG&E* also rejected the related argument that the owner was placed in a position which required it "to give up one constitutional right, the right to just compensation, in order to protect another, the right to take a meaningful appeal." (*PG&E, supra,* 33 Cal.App.3d at p. 328.) The University makes a similar claim here, asserting that in order to receive the constitutionally required "prompt release" of the deposit, it must give up its statutory right to fully litigate the District's right to take.

■ Here, no constitutional right to an appeal exists, only a statutory one. (*PG&E, supra,* 33 Cal.App.3d at pp. 328–329.) This statutory right to appeal may be made subject to reasonable conditions. (*Id.* at p. 329; see also *Redevelopment Agency v. Goodman* (1975) 53 Cal.App.3d 424, 431–432 [125 Cal.Rptr. 818].) In addition, as the Court of Appeal observed in this case, "having to leave funds on deposit is a reasonable condition to place on a condemnee's statutory right to further litigate the right to take issue, or pursue a final adjudication of the issue on appeal. In enacting section 1255.260, the Legislature could have reasonably concluded that a condemnee who denies the condemner's right to take should not be able to withdraw the probable amount of its just compensation. . . . [¶] Indeed, it would be inconsistent for [the University] to insist on adjudicating the [District's] right to take its property, while it enjoys the use and benefit of the probable amount of its just compensation." "A condemnee who denies the condemner's right to take cannot have it both ways. He cannot withdraw the deposit *and* challenge the right to take. It is reasonable to require him to choose one or the other."

■ In addition, the statutory scheme does provide for prompt resolution of whether the condemner has the right to take the property in question. The owner may request the issue be heard in a bifurcated proceeding, and the matter is entitled to priority on the civil trial calendar. (§§ 1260.010, 1260.110.) The owner may seek review of the issue by extraordinary writ. (§§ 598, 904.1; *Plaza Tulare v. Tradewell Stores, Inc.* (1989) 207 Cal.App.3d 522, 523–524 [254 Cal.Rptr. 792].) The federal and state Constitutions also require that if the amount of compensation finally determined in the proceeding exceeds the amount of the deposit of probable just compensation, the property owner will be compensated for the delay in payment by prejudgment interest on the balance owed. (U.S. Const., 5th Amend.; Cal. Const., art. I,

§ 19.) The condemner must also pay prejudgment interest on both the balance owed and any portion of the deposit that the property owner chose not to withdraw, running from the date the condemner was authorized to enter into possession of the property. (§§ 1268.310–1268.360.)

Thus, whatever the owner chooses to do, in view of the procedural due process safeguards in place, the waiver rule of section 1255.260 in no way impairs the owner's constitutional right to a prompt release of the deposited funds or imposes an unconstitutional choice on the owner. (Cal. Const., art. I, § 19; § 1255.210 et seq.; see *Perry v. Sindermann* (1972) 408 U.S. 593, 597 [33 L.Ed.2d 570, 92 S.Ct. 2694] [right of access to government benefit may not be conditioned on relinquishing constitutional right.].)

In sum, the Legislature reasonably could have found that it would be inconsistent for an owner to deny the condemner's right to take with one hand while it withdraws and uses the condemner's deposit with the other. An owner cannot have it both ways. It is reasonable to require the owner to choose one or the other: either to deny the condemner's right to take the property and litigate, or to take the deposit.

## CONCLUSION

Where, as here, a deposit of probable compensation is made, and the trial court determines that the deposit equals or exceeds the probable amount of the owner's just compensation, the property must be valued on the date of the deposit. (§ 1263.110.) The value of the property on the date of the deposit is a fair amount to award the owner for the taking of its property. A greater award would be unjust to the condemner. " 'The just compensation required by the Constitution to be made to the owner is to be measured by the loss caused to him by the appropriation. He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public.' " (*Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 715 [66 Cal.Rptr.2d 630, 941 P.2d 809], quoting *Bauman v. Ross* (1897) 167 U.S. 548, 574 [42 L.Ed. 270, 17 S.Ct. 966].)

In addition, as long as a probable compensation deposit based on such valuation remains available to the property owner for "prompt release," the further imposition of a waiver of the right to challenge the validity of the taking if the owner elects to withdraw the deposit does not undermine the constitutionality of the statutory scheme nor the Legislature's chosen method of valuation.

Based on the foregoing analysis, we affirm the Court of Appeal's judgment and remand the matter for further proceedings consistent with this conclusion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.