Filed 1/11/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MEDICAL ACQUISITION COMPANY, INC., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN DIEGO COUNTY, <br><br> Respondent; <br><br> TRI-CITY HEALTHCARE DISTRICT, <br><br> Real Party in Interest. | D072509 <br><br> (San Diego County Super. Ct. Nos. 37-2014-00009108-CU-BC-NC; 37-2014-00022523-CU-MC-NC) |


Original proceeding on a writ of mandate. Relief denied.

California Business Law Group, Duane S. Horning, Tracy Schimelfenig; David A. Kay and Tara Lusher for Petitioner.

Horvitz & Levy, Barry R. Levy, Mitchell C. Tilner; Gordon & Rees, Charles V. Berwanger and James E. Hawley for Real Party in Interest.

No appearance for Respondent.

This eminent domain case presents a novel issue regarding a defendant's postjudgment withdrawal of an increased deposit made by the condemning agency. Below, the condemning agency, Tri-City Healthcare District (Tri-City), made a pretrial deposit of $4.7 million and sought to take immediate possession of the subject property, a partially completed medical building. Medical Acquisition Company, Inc. (MAC) stipulated to Tri-City's possession of the building and withdrew the $4.7 million deposited under the "quick-take" provision of the California Constitution (see Cal. Const., art. I, § 19, subd. (a)) and Code of Civil Procedure[1] section 1255.010.

The eminent domain case was consolidated with another case involving a lease between the parties and ultimately proceeded to trial where a jury determined just compensation for the taking was nearly $17 million. The court subsequently ordered Tri-City to increase its deposit by about $12.2 million. Among other procedural maneuvers, Tri-City filed a notice of abandonment of the eminent domain proceeding. However, the superior court granted MAC's motion to set aside the abandonment. Tri-City has appealed that order in addition to the judgment.[2]

Tri-City ultimately deposited the additional funds, and MAC applied for prompt release of those funds without any bond or undertaking. Tri-City opposed the application. The court allowed MAC to withdraw an additional $4.4 million, but required

---

[1]    Statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]    Tri-City's related appeals are pending before this court, but are not part of this original proceeding.

a bond before MAC could withdraw the remaining amount. MAC then filed the instant petition for relief.

MAC argues that after judgment, withdrawing a deposit made in an eminent domain action is governed solely by section 1268.140. Under that section, MAC contends the superior court could not impose any undertaking regarding the prompt release of a deposit to a single claimant after judgment has been entered. In addition, MAC asserts the bonding requirement here frustrates the purpose of the quick-take provision of the California Constitution, and thus, should be declared unconstitutional.

Tri-City counters that the superior court had to impose an undertaking under section 1255.250. In the alternative, Tri-City maintains that the court had discretion to impose an undertaking under section 1268.140 and did not abuse its discretion by ordering the undertaking here. Finally, Tri-City insists MAC's constitutional challenge is without merit.

In this matter of first impression, we conclude that MAC is correct that any postjudgment withdrawal of a deposit in an eminent domain case is governed by section 1268.140. However, that provision allows a court, in its discretion, to impose an undertaking upon objection by any party to the proceeding. (§ 1268.140, subd. (c).) Here, the court exercised its discretion by allowing MAC to withdraw a portion of the deposit without any bond or undertaking, but requiring an undertaking if MAC wished to withdraw the remaining amount. The court did so because Tri-City has a claim to those fees if its appeal on the abandonment issue is successful. On the record before us, MAC has not shown how the court abused its discretion under section 1268.140.

3

Additionally, we determine that MAC's contention that the bonding requirement is unconstitutional is without merit. As such, we deny the requested relief.

FACTUAL AND PROCEDURAL BACKGROUND

The case is well known to us as it has spawned two pending appeals and three previous writ petitions prior to the instant one. We thus present a more robust factual and procedural background than we might typically provide in considering a writ of mandate. We do so because we think the additional facts are important to add context to the issue we consider here.

In December 2010, Tri-City and MAC executed two leases: (1) a ground lease, under which Tri-City leased open land within its Oceanside campus to MAC, and MAC agreed to construct, at its own expense, a 60,000-square foot, three-story medical office building on the land; and (2) a building lease, under which MAC agreed to sublease 25,000 square feet of the completed medical office building to Tri-City.

Construction of the medical office building began in October 2011. In July 2012, a dispute arose. Tri-City contended that MAC had defaulted under the ground lease. Unable to resolve the dispute, MAC filed a complaint against Tri-City for, inter alia, breach of the ground lease. Tri-City subsequently filed a complaint against MAC alleging unlawful conflicts of interest and breach of lease, among other claims. Tri-City later amended its complaint to include a cause of action for eminent domain, seeking to condemn MAC's rights under the ground lease.

On August 11, 2014, Tri-City filed a motion to take immediate possession of the ground lease under section 1255.410, which allows a condemning agency to take

4

possession of the condemned property before trial by depositing the probable amount of compensation as determined by appraisal. Tri-City deposited $4.7 million, the probable amount of compensation as determined by an appraiser, with the state treasurer.

On August 28, 2014, MAC applied for an order to withdraw the $4.7 million deposit. On September 2, 2014, pursuant to the parties' stipulation, the court granted Tri-City's motion to take immediate possession. Ten days later, Tri-City took possession of the partially completed medical office building.

The court also granted MAC's application to withdraw the deposit and signed an order directing the state treasurer to disburse the deposited funds plus interest to MAC. MAC received the deposited funds on October 23, 2014 and spent the money expanding its business and hiring additional employees. Tri-City maintains, and MAC does not dispute, that MAC cannot repay the $4.7 million if subsequently required to do so.

The consolidated actions proceeded to trial. The jury returned a verdict finding that the fair market value of the medical office building was $16.83 million. The jury also found that Tri-City breached the implied covenant of good faith and fair dealing in the ground lease or building lease. The jury awarded MAC $2,933,700 in damages for Tri-City's breach of the implied covenant of good faith and fair dealing.

The jury found no unlawful conflicts of interest on behalf of MAC.

On July 18, 2016, the court entered judgment reflecting the jury's verdict.[3]  About six weeks later, MAC filed a motion under section 1255.030 for an order requiring Tri-City to increase its deposit of probable compensation by about $12.2 million, which MAC calculated to be "the amount of its condemnation judgment plus prejudgment interest, less the $4.7 million deposit previously withdrawn by MAC."  The superior court granted MAC's motion and signed an order requiring Tri-City to deposit $12,212,351.06 plus interest of $180.96 per day for each day after September 23, 2016 (Deposit Order).

Tri-City filed a notice of appeal from the judgment, which it amended to include an appeal of the Deposit Order.  Tri-City's appeal is pending in this court under case number D071311.

In connection with its appeal of the Deposit Order, Tri-City filed a petition for a writ of supersedeas to stay enforcement of that order.  We summarily denied the request for relief.

Tri-City then filed a notice of abandonment of the eminent domain proceeding under section 1268.510, subdivision (a).  MAC filed a motion to set aside Tri-City's abandonment of the eminent domain proceeding under section 1268.510, subdivision (b).  After entertaining oral argument, the superior court granted MAC's motion to set aside the abandonment.  Tri-City filed a notice of appeal from that order, which has been

---

3      The court subsequently amended the judgment to include certain fees and costs that were awarded after entry of the original judgment.

consolidated with Tri-City's previous appeals. Tri-City also filed a petition for writ of mandate challenging the order as well. We summarily denied that petition.

When Tri-City did not pay the additional deposit as ordered by the superior court, MAC applied ex parte for an order and writ of execution directing the sheriff to enforce the order and for initiation of contempt proceedings. The superior court, unsure about its jurisdiction to enforce the order, suggested that MAC file a petition for writ of mandate with this court to seek advice as to the jurisdictional issue. MAC did so, but we summarily denied the petition.

MAC then filed in this court a motion to dismiss Tri-City's appeal from the judgment on the ground Tri-City had failed to comply with the Deposit Order. We ordered Tri-City to comply with the Deposit Order within 60 days or we would dismiss its appeal.

Tri-City ultimately complied with the Deposit Order by depositing $12,260,667.38 with the state treasurer. After we received notification of the deposit, we denied MAC's motion to dismiss Tri-City's appeal.

MAC then filed an application for an order allowing it to withdraw the $12.2 million deposit without a bond or undertaking. Tri-City responded that under section 1255.250, the court had no power to allow MAC to withdraw the deposit unless MAC posted an undertaking to protect Tri-City and the public in case Tri-City prevails on appeal and MAC must return the withdrawn sums. Alternatively, Tri-City argued that under section 1268.140, the court should exercise its discretion to require an undertaking,

7

given MAC's professed inability to repay even the $4.7 million deposit it withdrew before trial.

After hearing argument, the superior court issued an order granting in part and denying in part MAC's application. The court ordered the state treasurer to disburse $4.4 million of the deposit without a bond or other condition, and to disburse the "the balance upon posting a bond in the amount of the balance withdrawn."

MAC subsequently filed the instant petition for writ of mandate, asking this court to order "the immediate release of the remaining 'probable compensation' deposit, without any bonding or undertaking requirement." We requested Tri-City to file an informal response to the petition. Tri-City complied with our request, and in response, MAC filed a reply. We then issued an order to show cause why the relief sought in the petition should not be granted. Tri-City filed a return by answer to petition for writ of mandate. MAC filed a reply.

## DISCUSSION

"When the government exercises its power of eminent domain, and condemns or damages private property for public use, it must pay 'just compensation' to the owner. (Cal. Const., art I, § 19.)" (*Mt. San Jacinto Community College Dist. v. Superior Court* (2007) 40 Cal.4th 648, 653 (*Mt. San Jacinto*).) The landowner is to be compensated for the value of its property. (*Ibid.*) The landowner is entitled to a jury trial to determine the "just compensation" to which it is entitled. (See Cal. Const., art I, § 19; *Escondido Union*

8

*School Dist. v. Casa Suenos De Oro, Inc.* (2005) 129 Cal.App.4th 944, 958 (*Escondido*).)[4]

In a standard eminent domain proceeding, the government does not take possession and title until after judgment and full payment has been made; therefore, the " 'taking' " and the " 'compensation' " are contemporaneous. (*Escondido*, *supra*, 129 Cal.App.4th at p. 960.)[5] However, California eminent domain law has developed to allow a condemner to take early possession of the property before the litigation is concluded "upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation." (Cal. Const., art I, § 19, subd. (a); see § 1255.410; *Mt. San Jacinto*, *supra*, 40 Cal.4th at p. 653.) The immediate possession procedure also is referred to as a " 'quick-take' " eminent domain action. (*Ibid.*; *Escondido*, *supra*, at p. 960.)

Under the quick-take procedure, a condemning agency, pursuant to section 1255.010, may accomplish an early taking of the subject property by making a deposit of the "probable amount of compensation" at any time prior to entry of judgment. The amount of the deposit must be based on an appraisal by an expert qualified to express an

---

4     Other issues in an eminent domain case may be tried in addition to the just compensation question. For example, a landowner can challenge the government's right to condemn the subject property. (§§ 1250.360, 1250.370.) As there is no challenge to Tri-City's right to exercise the power of eminent domain in this case, we do not discuss this subject further.

5     Title to the subject property vests in the condemning party on the date of recordation of a final order of condemnation in the county recorder's office. (§ 1268.030.)

opinion as to the value of the property and must be supported by a written statement of, or summary of the basis for, the appraisal. (§ 1255.010, subd. (b).) After a deposit of probable compensation has been made, the court may order that possession of the property be transferred to the condemner, after considering any opposition from the owner of the property and making certain findings regarding the public entity's legal right to take the property and the relative hardships that would befall the parties were title not transferred until after legal proceedings are completed. (§ 1255.410.) Once the deposit is made, the property owner can apply to withdraw "all or any portion of the amount deposited," and the court "shall order the amount requested in the application, or such portion of that amount as the applicant is entitled to receive, to be paid to the applicant." (§§ 1255.210, 1255.220.)

Additional "statutory procedural safeguards" apply to the determination of probable compensation in quick-take proceedings. (*Mt. San Jacinto*, *supra*, 40 Cal.4th at p. 660.) For example, at any time after a deposit has been made, the trial court shall, upon motion of any party with an interest in the property, "determine or redetermine whether the amount deposited is the probable amount of compensation that will be awarded in the proceeding." (§ 1255.030, subd. (a).) In ruling on the motion, the "court may order the plaintiff to increase the deposit or may deny the plaintiff possession of the property until the amount deposited has been increased to the amount specified in the order"; or if possession has already transferred "order the amount deposited to be increased to the amount determined to be the probable amount of compensation," and if

the plaintiff does not comply, dismiss the action and award litigation costs and damages to the defendant. (§ 1255.030, subds. (b), (c).)

Also, the Legislature saw fit to include certain protections for the condemning agency or other entities claiming any interest in the deposit. (See §§ 1255.240, 1255.250.) These statutory protections are at the heart of the dispute here, and we therefore discuss them in detail below.

Here, Tri-City, based on an appraisal of the partially constructed medical building, deposited $4.7 million with the state treasurer under section 1255.010. After Tri-City sought and was awarded early possession of the property, essentially extinguishing MAC's rights under the ground lease, MAC withdrew the $4.7 million Tri-City deposited. Some three years later, the matter finally proceeded to trial. At the end of that trial, however, the jury determined the value of the condemned medical building was $16.83 million. MAC then moved under section 1255.030 for an order requiring Tri-City to deposit the difference between the jury's determination of just compensation and the original deposit. After some attempts to avoid making the additional deposit, Tri-City eventually deposited the required funds with the state treasurer. MAC moved for an order to withdraw the additional amount, and Tri-City objected, claiming that MAC should be required to post a bond or an undertaking before withdrawing any additional funds. The court allowed MAC to withdraw $4.4 million of the additional deposit without a bond or other condition, but required MAC to post a bond or other undertaking to withdraw the remaining amount (about $7.8 million).

11

MAC argues the court erred in requiring it to post a bond or undertaking to withdraw the remaining funds from the deposit. Tri-City counters that the superior court erred by allowing MAC to withdraw any of the additional funds absent an undertaking. The foundation of the parties' dispute rests on the application of different eminent domain statutes. Tri-City asserts that section 1255.250 governs the circumstances here, and the court had no discretion but to order an undertaking under that statute. MAC insists that section 1255.250 only applies to withdrawals before the entry of judgment and that postjudgment withdrawals, such as the one at issue here, are governed by section 1268.140. MAC has the better argument.

Section 1255.250, subdivision (a), provides in relevant part:

> "If the amount originally deposited is increased pursuant to Section 1255.030 and the total amount sought to be withdrawn exceeds the amount of the original deposit, the applicant, or each applicant if there are two or more, shall file an undertaking. The undertaking shall be in favor of the plaintiff and shall secure repayment of any amount withdrawn that exceeds the amount to which the applicant is entitled as finally determined in the eminent domain proceeding, together with interest as provided in Section 1255.280. If the undertaking is executed by an admitted surety insurer, the undertaking shall be in the amount by which the total amount to be withdrawn exceeds the amount originally deposited."

Section 1255.250 appears in the Eminent Domain Law, Chapter 6 "Deposit and Withdrawal of Probable Compensation; Possession Prior to Judgment," article 2 "Withdrawal of Deposit." Article 2 begins with section 1255.210, which provides in relevant part: "Prior to entry of judgment, any defendant may apply to the court for the withdrawal of all or any portion of the amount deposited." (§ 1255.210.) The Law Revision Commission comment to section 1255.210 states: "Section 1255.210 is derived

12

from subdivisions (a) and (c) of former Section 1243.7. After entry of judgment, deposits made under this chapter may be withdrawn pursuant to Section 1268.140. See Section 1268.010 (upon entry of judgment deposit made pursuant to this chapter deemed to be deposit made pursuant to section 1268.110.)" (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc., (2007 ed.) foll. § 1255.210, p. 568.) Section 1255.250 is derived from former section 1243.7, subdivision (b). (Cal. Law Revision Com. com., *supra*, foll. § 1255.250, p. 574.) The location of section 1255.250 within the eminent domain statutory scheme indicates the Legislature's intent that its provisions apply before entry of judgment. The Law Revision Commission comment to section 1255.210 supports the contention that after judgment, withdrawals are governed by section 1268.140. This court reached the same conclusion over 30 years ago. (See *San Diego Gas & Electric Co. v. Moreland Investment Co.* (1986) 186 Cal.App.3d 1151, 1156 (*San Diego*) ["Once a judgment is entered in a condemnation case, there is only one statutory basis under which monies then on deposit or thereafter deposited may be withdrawn, specifically, section 1268.140 of the Code of Civil Procedure. The second sentence of the first paragraph of the Law Revision Commission comments to that section reads: 'Section 1268.140 is the only provision for withdrawal of a deposit after entry of judgment regardless of whether the deposit was made before or after judgment.' "].)

Tri-City factually distinguishes *San Diego*, *supra*, 186 Cal.App.3d 1151, arguing that we should not follow that case because it did not address the issues presented here, namely whether sections 1255.030 and 1255.250 govern a postjudgment withdrawal of a deposit in a quick-take eminent domain proceeding. Although we concede that the issues

13

presented in *San Diego* did not require this court to consider sections 1255.030 and 1255.250, we are still left with our unequivocal conclusion that section 1268.140 is the only code section that governs withdrawal of funds in an eminent domain case after judgment, which is simply based on a plain reading of the statute. (See §1268.140, subd. (a) ["After entry of judgment, . . . ."].) Tri-City offers no persuasive argument why we should interpret the words "after entry of judgment" as merely a suggestion or one of multiple possible statutes that should govern a postjudgment withdrawal of a deposit.

In addition, we disagree with Tri-City that *Whittier Redevelopment Agency v. Oceanic Arts* (1995) 33 Cal.App.4th 1052 (*Oceanic Arts*) warrants a different conclusion. That case did not involve a request to withdraw funds after judgment, or any issue of withdrawal of deposited funds at all. Rather, in *Oceanic Arts*, the appellate court affirmed the trial court's granting of the defendant owners' motion to require the plaintiff agency to increase its deposit following an order awarding the agency prejudgment possession and a judgment awarding defendants more than the amount deposited by the plaintiff as probable compensation. (*Id*. at p. 1054.) The court held that "when a plaintiff in an eminent domain action has acquired prejudgment possession of the property, the amount of the judgment exceeds the amount plaintiff has deposited as probable compensation and an appeal of the judgment is pending, the trial court has authority under section 1255.030 to order plaintiff to increase its deposit to an amount equal to the amount of the judgment." (*Whittier, supra,* at p. 1060.) Although the court alluded to various eminent domain statutes that offer a plaintiff protection in the eminent domain

14

context, it did not state that section 1255.250 would apply to a postjudgment withdrawal. And Tri-City offers no cogent argument why *Oceanic Arts* is applicable here.

We therefore follow *San Diego*, *supra*, 186 Cal.App.3d 1151 and agree there is a specific statute that governs withdrawal of deposits after entry of judgment–section 1268.140. That statute provides:

> "(a) After entry of judgment, any defendant who has an interest in the property for which a deposit has been made may apply for and obtain a court order that he be paid from the deposit the amount to which he is entitled upon his filing either of the following: [¶] (1) A satisfaction of the judgment. [¶] (2) A receipt for the money which shall constitute a waiver by operation of law of all claims and defenses except a claim for greater compensation. [¶] . . . [¶] (c) Upon objection to the withdrawal made by any party to the proceeding, the court, in its discretion, may require the applicant to file an undertaking in the same manner and upon the conditions prescribed in Section 1255.240 for withdrawal of a deposit prior to entry of judgment. [¶] (d) If the judgment is reversed, vacated, or set aside, a defendant may withdraw a deposit only pursuant to Article 2 (commencing with Section 1255.210) of Chapter 6." (§ 1268.140.)

Section 1268.140 addresses the issue here directly and allows the court discretion to require an undertaking. The statute would be rendered meaningless were we to determine that section 1255.250 applies after judgment to mandate an undertaking. We thus reject Tri-City's claim that section 1255.250 requires the court to impose an undertaking before allowing MAC, after judgment, to withdraw money to which it is entitled from the deposit.

Nevertheless, despite arguing that section 1268.140 is the only statute that applies to a postjudgment withdrawal, MAC asserts that no circumstances existed here that would have allowed the court to exercise its discretion under the statute. MAC

15

emphasizes that, in deciding whether an undertaking is warranted, a superior court's discretion is constrained by the dictates of section 1255.240. Further, MAC insists that section limits a court's discretion to order an undertaking only if more than one defendant claims a right to the deposited funds. In other words, section 1255.240 does not apply to a situation like the one here, where the condemning agency attempted to abandon the eminent domain proceeding, and is appealing the superior court's order setting aside the abandonment.

Section 1255.240, referenced in subdivision (c) of section 1268.140, provides, in part: "If the court determines that an applicant is entitled to withdraw any portion of a deposit that another party claims or to which another person may be entitled, the court may require the applicant, before withdrawing such a portion, to file an undertaking." (§ 1255.240, subd. (a).) MAC argues that the terms "another party" and "another person" could only refer to another "claimant." MAC further defines an "adverse claimant" as a person claiming title to the property against the owner. MAC asserts a condemning agency does not have any adverse claim to the subject property, but "simply a monetary interest in recovering any deposit withdrawn by the owner." Therefore, MAC insists that the condemning agency could never be a claimant. We do not read section 1255.240 so narrowly.

That statute gives a court discretion to order an undertaking when an applicant is entitled to withdraw any portion of a deposit that another party or person may be entitled to. The statute does not focus on entities with an ownership interest in the subject property, but entities with a claim to the deposit. The statute does not use other limiting

16

words, like "additional applicant," "defendant," or "landowner" to further define a party or person that may have an interest in a portion of the deposit. And although one who has an interest in the property may also have a claim to at least a portion of the deposit, there is nothing in the statute that requires a "party" or a "person" to have such a property interest. Instead, the statute allows a court to order an undertaking if another entity has a claim that it is entitled to at least a portion of the deposit. It does not tether that claim to an interest in the subject property or otherwise condition that claim. Here, by way of abandonment and appeal of the order setting aside the abandonment, Tri-City contends it has an interest in at least a portion of the deposit. We agree.

MAC also maintains that a condemning agency could never be a "party" or "person" under section 1255.240 because such an interpretation would render the statute nonsensical. To this end, MAC points out that section 1255.240, subdivision (a) limits the amount of the undertaking to "the portion claimed by the adverse claimant or appearing to belong to another person. If executed by two or more sureties, the amount shall not exceed double such portion." (§ 1255.240, subd. (a).) MAC thus argues that if a condemning agency could be a "claimant" under the statute, bonding of the entire amount would always be allowed, nullifying the section entirely. Alternatively stated, MAC is concerned that if a condemning agency appeals any eminent domain judgment, the defendant could be required, under section 1255.240, to offer an undertaking of the entire amount of the deposit. We do not share MAC's concern.

MAC's argument assumes that a condemning agency appealing from an adverse eminent domain judgment will always argue that it is entitled to the entire amount of the

17

deposit. But for this to be true, the condemning agency would have to argue that it did not have to pay anything for the subject property. We struggle to contemplate a typical situation where a government agency would bring an eminent domain action against a private land owner, proceed to jury trial, have the jury award a value of just compensation, and then the agency argue nothing should have been paid. We do not foresee such tactics leading to the abuse of section 1255.240. Indeed, perhaps the only type of appeal where there would even be the potential for a bond of the entire amount of the deposit is when the condemning agency seeks to abandon the eminent domain action and return the property to the defendant. In that instance, it is *possible* that a superior court could require a bond equal to the entire deposit.

Yet, this possibility does not cause us consternation because section 1255.240 is discretionary. And a superior court's use of discretion cannot be absurd, arbitrary, or beyond the bounds of reason. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.) Section 1255.240 allows the superior court to require the undertaking and set the amount (with a ceiling placed on the amount). The instant matter is an excellent example of the court cautiously exercising that discretion with the goal of fairness to the parties. In exercising its discretion under section 1255.240 to require an undertaking before MAC could withdraw the remainder of the deposit after permitting MAC to withdraw an additional $4.4 million without any undertaking, the court explained:

> "All right. So as is with virtually everything in this case, there's never a clear simple path, and I find myself wading through the statutes and the decisions from prior courts that are close to, nearby, kind of speak towards what we're doing in trying to fashion the appropriate remedy. [¶] I'm going to quote one of my mentors,

18

which I probably have done in this case before because it's been appropriate, and that was Justice McIntyre who told me when I was appointed to the bench, 'When you look at everything and there's no clear direction and you truly have one of those cases where there's nothing exactly on point and you're having to kind of forage for yourself,' he said, 'Try and figure out what's fair and reasonable, and then tell us why you did it. As long as you were fair and reasonable and there's not something that goes the other way, we'll probably uphold you.' [¶] So I've looked at this, and I do think this Court is in a unique position, having lived through this case with you all for three plus years on countless motions, I think 900 entries in the Register of Actions. I don't think there's been an easier decision that's been before the Court. As I have said repeatedly, the level of lawyering in this case was extraordinary. As with anything else when you get to a jury, somebody is going to win and somebody is going to lose. [¶] So I have considered all of that. I have considered the prior fee order that I've made. I've considered the bargains that were struck by the parties throughout the prelitigation and litigation and expectancies of the parties. I've considered going forward what is in play and I've considered the Tri-City's financial situation as argued in prior motions, I've considered the plaintiff's - - . . . [¶] interjection by counsel] [¶] -- positions, financial condition, its submission of its financials, both in the underlying case as well as in prior arguments, and I have decided to release without bond $4.4 million of the money deposited. The remainder will require a bond. [¶] The Court's thinking is in part this: That is -- that the defense/respondent/cross-complainant maintains in its possession the property and the ability to use that property if it so seems fit, which has been encouraged multiple times by the Court. I've considered the cost and burden upon the plaintiff/petitioner as referenced in earlier motions, something along those lines. [¶] It therefore seems reasonable to the Court that this number, tied with the other number, puts the petitioner in the spot after payment of fees and everything else in at least as good a position as it -- it was at earlier in the case had this litigation not gone forward. It preserves the ability for the petitioner to recover the funds, the remainder. They're in a place where I believe they can't be touched, though I -- because of the allegations of financial stress on the respondent, I am at least a little bit concerned about whether that money is attachable by somebody else. [¶] But on the other hand, if the Court of Appeal goes a different direction -- I don't see that the petitioner's economics such that they wouldn't have the money to at least return everything except what they paid in attorney's fees, perhaps, if the Court of

19

Appeal were to order that, but it also preserves if the Court of Appeal goes a different direction, the public entity's ability to recover a substantial portion of those funds. So that will be the order of the Court. If you want, you can take the rest, but it would be subject to a bond. But as to the 4.4, you're entitled to remove that immediately, which puts you at 9.1 total. [¶] My recollection is it was about 2.15 in prior attorney's fees and costs that the petitioner incurred. If I round number it, it may be 250 for the appeal process and getting back to me, and then another $2.2 million, the 4.7 earlier put you back in that situation. [¶] That's how I got there. I'm not looking for further argument on it. I know you'd like more; I know you'd like less. You'd like a bigger bond; you'd like a smaller bond. [¶] I will say if you become -- not to invite you back, but if you become aware that there is a substantial threat to those funds, something happening to them that I'm unaware of, I would encourage you to come back and see me on that, but as long as everybody's confident that those funds will remain, they're able to satisfy the plaintiff should you succeed or return to the defense if you succeed, I think this is a reasonable result. [¶] It is not in any way, shape, or form a cut the baby in half or anything like that. I spent a lot of time with this trying to find that fair and reasonable position."

In addition, our conclusion that sections 1268.140 and 1255.240 allow the court to order an undertaking here is further buttressed by section 1268.160. Subdivision (a) of that section provides: "Any amount withdrawn by a party pursuant to this article in excess of the amount to which he is entitled as finally determined in the eminent domain proceeding shall be paid to the parties entitled thereto. The court shall enter judgment accordingly." If the defendant fails to pay the judgment within 30 days, "the court may, on motion, enter judgment against the sureties, if any, for the amount of such judgment." (§ 1268.160, subd. (c).) Simply put, this code section allows a plaintiff to recoup the excess withdrawal not only from the defendant but any sureties as well. Accordingly, it appears the Legislature contemplated the possibility that a defendant would be required to

20

offer an undertaking before withdrawing some of the deposit.  We have no indication that the Legislature confined those possibilities to prejudgment withdrawals under section 1255.250 or instances where more than one landowner and/or defendant exists.  Thus, we conclude the Legislature saw fit to grant the superior court the discretion to require an undertaking on a postjudgment withdrawal to protect a plaintiff who may be entitled to some of the deposit.

In summary, we conclude that section 1268.140 permits a court to order an undertaking before a defendant withdraws funds from a deposit after judgment.  Per section 1255.240, a court may order an undertaking even when it is the condemning agency who is claiming an interest in at least a portion of the deposit.  This seems to be especially appropriate in an instance like here, where there is an appeal regarding the condemning agency's attempt to abandon the eminent domain proceeding, the defendant already has withdrawn significant funds from the deposit (here, $9.1 million) and there is a question regarding the defendant's financial ability to return the funds to the condemning agency if later required to do so.

MAC's final argument is that section 1268.140, as applied to it here, is unconstitutional.  Specifically, MAC contends the undertaking requirement effectively prevents it from withdrawing the deposit as permitted under the California Constitution.  As such, MAC insists we should find section 1268.140 unconstitutional.  However, MAC

is not making a facial challenge to sections 1255.240 or 1268.140.[6]  Instead, he is making an as applied challenge to those statutes.

"An as applied challenge may seek . . . relief from a specific application of a facially valid statute or ordinance to an individual . . . who [is] under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied. . . ."  (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 (*Tobe*).)  An as applied challenge "contemplates analysis of the facts of a particular case . . . to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to who it was applied of a protected right."  (*Ibid*.)

Article I, section 19 of the California Constitution authorizes the Legislature to enact statutory procedures to govern a quick-take eminent domain action, wherein a condemning agency may deposit the probable amount of compensation and take possession of the property before judgment and the condemnee may obtain the prompt release of the deposit.  Per this authority, the Legislature enacted chapter 6 of the Eminent Domain Law (§§ 1255.010-1255.480), a comprehensive statutory scheme governing the quick-take process, including the deposit of the probable amount of

---

[6]     A litigant who seeks to prevail on a facial challenge to the constitutionality of a statute must establish, at a minimum, that the statute is unconstitutional " 'in the generality or great majority of cases.' "  (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1126-1127; italics omitted.)  MAC makes no such arguments in its petition.  Instead, it focuses on the application of sections 1268.140 and 1255.240 under the specific circumstances of the instant matter.

22

compensation, prejudgment possession by the plaintiff, and withdrawal of deposits by the defendant. (Cf. *City of Needles v. Griswold* (1992) 6 Cal.App.4th 1881, 1892.)

Within the quick-take statutory scheme, the Legislature also was concerned about the potential that the condemnee would be unable to repay the amount, or a portion of the amount, it withdrew from the deposit if subsequently required to do so. Thus, it enacted sections 1255.240 and 1255.250. The former statute gives a court discretion to order an undertaking when two or more parties or persons claim entitlement to at least a portion of the deposit. (See § 1255.240, subd. (a).) The later statute requires a court to order an undertaking where an applicant or applicants seek to withdraw funds from the deposit prejudgment and those funds were increased, under section 1255.030, beyond the amount originally deposited. (§ 1255.250, subd. (a).) Both of those statutes reflect the Legislature's attempt to balance the various parties' interests and achieve fairness in a quick-take eminent domain action.

In short, to effectuate subdivision (a) of section 19 of article I of the California Constitution, the statutes provide a mechanism that allows the plaintiff to take prejudgment possession (§ 1255.410) and the defendant to receive the potential just compensation at the time the plaintiff takes possession (§ 1255.210). The statutes also allow a party to ask the court to increase the amount of the deposit if justified (§ 1255.030), but protect against the possibilities that (1) a defendant will not be able to repay what it withdraws from the deposit under specific, limited circumstances; and (2) another entity may have a claim to the deposit (§§ 1255.240, 1255.250).

The basis of MAC's argument that the statutes are unconstitutional as applied to it is that requiring an undertaking effectively denies it the right to obtain prompt release of the funds of the deposit because bonding companies *all* require 100 percent collateral to issue a bond. Thus, under MAC's argument, it must offer the functional equivalent of the deposit before it can withdraw the deposit, effectively negating any value of obtaining the deposit. In other words, there is no prompt payment as required under the California Constitution.

Because MAC raises an as applied constitutional challenge to section 1268.140, it is important that we briefly revisit the way that statute has been applied here. Below, the superior court ordered that, of the approximately $12.2 million in the deposit, MAC could withdraw $4.4 million without any undertaking. To withdraw the remaining amount of the deposit (about $7.8 million), MAC must offer an undertaking. MAC contends, under the application of section 1268.140 to it in this matter, the purpose of the prompt payment provision of the California Constitution is frustrated. However, on the record before us, MAC has not provided evidence to support its position.

For example, MAC claims all bonding companies will require 100 percent collateral before they issue a bond to MAC. Nevertheless, MAC only points to e-mails from two bonding companies indicating that one company "requires full collateral[] . . . in the form of a cashier's check or an Irrevocable Letter of Credit" and another company requires "100% collateral of the $12,100,000 penalty." Based on these two e-mails (one that is simply relaying an alleged communication with a bonding company), MAC extrapolates that *all* bonding companies in the instant matter would require 100 percent

24

collateral before issuing a bond. There is no indication in the record that the two bonding companies MAC consulted speak for the entire industry. There is no evidence indicating that the typical practice for *all* bonding companies would be to require 100 percent collateral before issuing a bond.

In addition, although the record is somewhat thin regarding the communications between MAC and the bonding companies, it appears the circumstances under which MAC asked for a bond are different from what is at issue here. Based on our readings of the relevant declarations and e-mails, it appears MAC approached the two bonding companies and asked them to anticipate the court requiring an undertaking for the entire $12.2 million deposit. The bonding companies responded accordingly. There is no indication in the record what the bonding companies would require from MAC to issue a bond for the additional $7.8 million, especially considering that MAC could obtain an additional $4.4 million without a bond.

Finally, there was evidence in the record indicating that there was a possibility a company would be willing to provide a bond without an undertaking if it was satisfied with the requesting company's audited financials.

In brief, on the record before us, MAC has not shown us that the application of section 1268.140 to it in this case deprived it of a protected right. (See *Tobe*, *supra*, 9 Cal.4th at p. 1084.)

DISPOSITION

The request for relief is denied.  Because of the novel issues involved in this matter, each side is to bear its own costs.

HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


AARON, J.