Filed 3/2/23

<u>**CERTIFIED FOR PUBLICATION**</u>

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| CLYDE DAVID ROBINSON et al., | |
| Petitioner, | F085211 |
| v. | (Super. Ct. No. BCV-22-101535-JEB) |
| THE SUPERIOR COURT OF KERN COUNTY, | |
| Respondent; | **OPINION** |
| SOUTHERN CALIFORNIA EDISON COMPANY, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Eric Bradshaw, Judge.

Schwartz Law and Jeffrey M. Schwartz for Petitioner.

No appearance for Respondent.

Nossaman, Bradford B. Kuhn and Steven M. Silva for Real Party in Interest.

-ooOoo-

Southern California Edison Company (Edison), an investor-owned public utility, filed a complaint in eminent domain to condemn an easement across a landowner's property for the purpose of accessing and maintaining existing power transmission lines. Edison also filed a motion for order of prejudgment possession under the quick-take

provisions of Code of Civil Procedure section 1255.410.[1]  The trial court granted the motion.  The landowners, Clyde David Robinson and Kathryn Ann Devries (husband and wife; collectively, Robinson), filed a petition for writ of mandate requesting this court vacate the order granting Edison prejudgment possession.

We publish this opinion because it resolves issues of first impression involving the interpretation of section 1255.410.  A trial court evaluating a quick-take motion in the absence of a timely opposition shall grant the motion "if the court finds each of the following:  [¶] (A) The plaintiff is entitled to take the property by eminent domain.  [¶] (B) The plaintiff deposited pursuant to Article 1 (commencing with Section 1255.010) an amount that satisfies the requirements of that article."  (§ 1255.410, subd. (d)(1).)

When the condemning party is not a public entity, we interpret the statutory phrase "plaintiff is entitled to take the property by eminent domain" to have at least two components.  First, the plaintiff must be "a person authorized by statute to exercise the power of eminent domain to acquire" the property for the proposed use.  (§ 1240.020.)  Second, the plaintiff must demonstrate all the requirements in subdivisions (a) through (c) of section 1240.030 are satisfied—that is, the public interest and necessity require the project, the property sought is necessary for the project, and the project is planned and located to be most compatible with the greatest public good and least private injury.

Another issue of statutory construction is whether the trial court must *expressly* find that each requirement in section 1240.030 has been satisfied.  In the circumstances of this case—that is, when a privately owned public utility with the authority to condemn for utility purposes seeks to exercise the power of eminent domain—we conclude the phrase "if the court finds" (§ 1255.410, subd. (d)(1)(A)) requires the trial court to expressly find on the record that the public utility has proven, by a preponderance of the

---

[1]      Undesignated statutory references are to the Code of Civil Procedure.

2

evidence, each requirement in section 1240.030 has been satisfied. The express findings will serve some of the functions of a public entity's resolution of necessity and will assure meaningful appellate review of the grounds for the trial court's decision.

Here, the trial court did not make express findings. Among other things, the court did not expressly find that it was necessary for the access easement to be 16 feet wide (§ 1240.030, subd. (c)), that the 16-foot wide access easement was compatible with the least private injury (§ 1240.030, subd. (b)), or that it was necessary for Edison to have the right to move guy wires and anchors, crossarms, and other physical fixtures onto the property.

We therefore vacate the order of prejudgment possession and direct the trial court to conduct further proceedings on the motion. Because the maintenance of power transmission lines is a matter of urgency, we issue a peremptory writ in the first instance. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178.)

## FACTS AND PROCEEDINGS

Robinson owns a five-acre parcel (APN 054-250-05) located on Burlando Road in Kern County (the Property). Robinson states he is Chairman of the Kawaiisu Indian Tribe; he acquired the Property because it is within his Kawaiisu Tribal treaty territory; the Tribe operates a Botanical and Wildlife Research Center on the Property; the Property contains environmentally sensitive plants and animals; rare manzanita plants grow throughout the Property (including the areas where Edison seeks an easement); and the Tribe conducts religious ceremonies on the Property using indigenous plants (including yerba santa, oak and manzanita).

Edison is an investor-owned public utility corporation in the business of purchasing, selling, generating, transmitting, distributing, and delivering electricity to the public. As a public utility, Edison is regulated by the California Public Utilities

3

Commission (CPUC). Edison owns and operates aerial transmission lines that pass over the Property.

Edison contends it has a prescriptive aerial-transmission-line easement and an easement allowing it access to the Property. On June 21,[2] Edison filed a complaint in eminent domain to obtain a formal, recorded easement. Edison alleged the lawsuit was required because, despite its prescriptive easement, Robinson will not allow Edison access to the Property to maintain and repair the transmission lines.[3]

The requested transmission line easement is 50 feet wide, is located directly under the existing lines, and totals 17,324 square feet (approximately 0.4 acres). Thus, the easement is approximately 115 yards long, which is slightly longer than a city block. Besides a right of way for operating, inspecting, maintaining and repairing the existing transmission lines, the "GRANT OF EASEMENT" document drafted by Edison also would allow it to "construct, … enlarge, … relocate … electrical systems and communications systems … consisting of guy wires and anchors, crossarms, wires and other fixtures and appliances, with necessary appurtenances, for conveying electrical energy."

The requested access road easement is 16 feet wide, loops across the parcel to allow access to the area beneath the lines, and totals 14,934 square feet (approximately 0.34 acres). Edison's "GRANT OF EASEMENT" document states the access road easement would allow Edison "to construct, use, maintain and repair an access road in, on, over, along and across a strip of land of varying width." It also states: "The

---

[2] All dates in this opinion are for the year 2022, unless stated otherwise.

[3] Robinson describes Edison's existing easement as a prescriptive easement obtained by Edison in the 1960's and asserts the prescriptive easement is limited to the overhead power lines because there are no power poles or equipment on the Property's surface.

4

approximate location of said sixteen (16.00) foot wide 'Access Road Easement' is more particularly depicted on" an attached diagram of the Property.

The "GRANT OF EASEMENT" document also gives Edison "the right to clear and to keep clear the above described real property, free from explosives, buildings, equipment, brush, combustible material and any and all obstructions of any kind, and the right to trim or remove any tree or shrub which, in the opinion of [Edison], may endanger said systems, or any part thereof, or interfere with the exercise of the rights herein granted." As drafted, this provision is ambiguous because the phrase "the above described real property" could refer to the entire five-acre parcel, but probably was intended to mean the approximately 0.74 acres within the easements.

*Motion for Prejudgment Possession*

On June 28, Edison served a motion for order for prejudgment possession with a hearing date of November 4. The motion included that notice required by statute that any opposition to the motion must be served and filed within 30 days of service. (§ 1255.410, subd. (a).) The next day, Edison served and filed a "re-noticed" motion with a hearing date of October 19.

The motion for prejudgment possession was supported by a seven-paragraph declaration of Cynthia D. Calemmo. The declaration states Calemmo is "a Real Estate Advisor for … Edison" and is familiar with the aerial transmission lines that traverse the Property and the network of transmission lines to which they connect. She describes the transmission lines that cross the Property as "a key line that provides service to the City of Kernville" and states the proposed transmission line easement and access easement are the most feasible way to inspect, maintain, repair, and operate the transmission lines and, without the easements Edison cannot inspect, repair or maintain its transmission lines. Calemmo states Edison has not been able to inspect the transmission line for the past seven years because Robinson has denied Edison access to the Property and, furthermore,

5

Edison needs access to remove obsolete automatic and wedge type line splices and replace them with a compression slice or a clamp star or, alternatively, place a clamp star over the existing splice. Calemmo states the CPUC mandates the replacement of outdated line splices and Edison faces a potential fine by CPUC if it is unable to complete the replacement.

Calemmo's declaration also asserts there are no improvements within the proposed easements and Edison's activities on the easements are not expected to significantly interfere with Robinson's use and occupancy of the Property. We note Edison's moving papers did not acknowledge that the requirements in subdivisions (a) through (c) of section 1240.030 applied and, thus, did not address each requirement individually.

The 30-day period for filing an opposition expired without Robinson filing an opposition to the motion for prejudgment possession.

*Demurrer and First Writ Petition*

On August 23, Robinson filed a demurrer to Edison's complaint along with supporting declarations. On September 27, after Edison filed an opposition and Robinson filed a reply, the trial court held a hearing on Robinson's demurrer and overruled it.

On October 10, Robinson filed a petition for writ of mandate challenging the order overruling the demurrer and requested a stay of the hearing on the motion for prejudgment possession, which was scheduled for October 19. On October 14, this court issued an order denying Robinson's petition for writ of mandate and the request for stay. We concluded that a privately owned public utility such as Edison was not authorized or required to adopt a resolution of necessity before initiating an action in eminent domain. The order stated "the superior court must decide whether the requirements in Code of Civil Procedure section 1240.030, subdivisions (a) through (c) have been satisfied in this condemnation action. (See Code Civ. Proc., § 1255.410, subd. (d)(2)(A).) Edison will have the burden of proving each statutory element is satisfied."

6

*Opposition to Motion and Reply*

On August 23, the same day the demurrer was filed, Robinson filed an opposition to Edison's motion for prejudgment possession, a supporting declaration, a motion to strike portions of the Calemmo declaration, and a request for relief for the untimely opposition with supporting attorney declaration.

Robinson's opposition argued Edison was not entitled to take the easement because it had (1) not adopted a resolution of necessity; (2) not complied with the California Environmental Quality Act; and (3) not satisfied the requirements for exercising the power of eminent domain set forth in section 1240.030, subdivisions (a) through (c). Robinson specifically argued that Edison had "not even alleged—let alone demonstrated—that the easement will cause the 'least private injury' possible, as required by … section 1240.030, subdivision (b)." Based on how the Property and its plants are used by Robinson and the Tribe, Robinson argued the private injuries included adverse impacts to (1) the plants, some of which are protected under state or federal law, and (2) the Tribe's ability to use the Property for religious ceremonies. Robinson also asserts a set for videotaping ecological research is located within the access easement sought by Edison and would be destroyed by the proposed access.

Robinson also argued prejudgment possession of the easement was not necessary. Robinson asserted Edison had accessed and maintained all but one of its transmission lines using a bucket truck without entering the Property. Robinson argued Edison could reach the last splice if it used a larger bucket truck and, therefore, did not need to bring a truck onto the Property.

On October 4, Edison filed a reply to Robinson's untimely opposition along with supporting declarations from Debra Garfinkle, Roger Overstreet and William Payne. Garfinkle's declaration stated Edison had deposited $8,000 with the State Treasurer as estimated compensation for the proposed easement.

7

Payne's declaration stated he had been a lineman for Edison and now was the senior patrolman for the area where the Property is located. Payne stated he had visited the Property on several occasions and described why an Edison bucket truck parked on Rio Vista Drive would not be able to reach the splice located 55 feet from the roadway and 45 feet off the ground. Payne also stated that creating a new access point on Rio Vista Drive under or near the transmission lines posed significant terrain challenges, including removing large boulders, removing the enclosing fence, and regrading the area—actions that probably would be more injurious to the Property than using the existing roadways on the Property. Based on publicly available aerial images and his personal observations of the Property, Payne stated that "there are preexisting unpaved roads on the Property which [Edison] proposes to use to access the transmission line" and Edison "has used these roads in the past to inspect, maintain and repair the transmission line over the Property, including with the permission of defendants." Payne's declaration did not address why the access road easement needed to be 16 feet wide.

Overstreet's declaration stated he had worked for Edison for almost 15 years and was "an Environmental Science Senior Advisor and the Biology Program Manager" for Edison. The declaration described the review conducted by Overstreet and set forth his opinion that Edison's "activities required to inspect, maintain, and repair the transmission line are unlikely to have an adverse effect on the habitat of value on the site." Overstreet did not address the width of the existing roadways on the Property or the effect of widening those roadways to 16 feet.

*Hearing and Order*

The October 19 hearing on Edison's motion for prejudgment possession went forward as scheduled. No testimony was presented. After hearing the arguments of counsel, the trial court adopted its tentative ruling to deny Robinson's motion to strike a portion of Calemmo's declaration and grant Edison's motion for order of prejudgment

8

possession.  The court did not make any explicit oral findings on the record, other than stating that "all of the criteria seems to be satisfied" when announcing the tentative to grant Edison's motion.

The trial court signed an order of prejudgment possession prepared by Edison's counsel.  The order, which was more detailed than the court's oral ruling, stated in part:

"1.  Edison is authorized by law to take the Property by eminent domain.

"2.  Edison has deposited with the State Treasurer an amount of compensation for the taking of the Property that complies with Code of Civil Procedure sections 1255.010 et seq.

"3.  Edison is authorized and empowered to enter upon and take prejudgment possession of the Property for the purposes described in Edison's Complaint on file in this action, pursuant to Code of Civil Procedure section 1255.410.

"4.  Service of this Order shall be made in the manner specified in Code of Civil Procedure section 1255.450, subdivisions (b), (d) and (f).  Edison shall be entitled to take possession of the Property thirty (30) days after service of this Order."

*Second Writ Petition*

On November 4, Robinson filed a petition for writ of mandate challenging the order of prejudgment possession.  On November 10, Robinson submitted a copy of the reporter's transcript from the October 19 hearing.

On November 17, this court issued a stay of the order of prejudgment possession, directed Edison to file an informal response to the petition within 30 days, granted Robinson 20 days from the filing of the informal response to submit an informal reply, and notified the parties that this court might elect to issue an order for peremptory relief in the first instance.  (See *Palma v. U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d 171.)

On November 21, Robinson filed an amended appendix in support of the writ petition that included the declarations of Garfinkle, Overstreet and Payne that had been omitted from the appendix filed simultaneously with the writ petition.

9

On December 20, Edison filed its informal response. On January 10, 2023, Robinson filed an informal reply.

## DISCUSSION

I.      EDISON'S AUTHORITY TO CONDEMN PRIVATE PROPERTY

A.      <u>Public Utilities and the Eminent Domain Power</u>

The constitutional basis for eminent domain proceedings is section 19 of article I of the California Constitution, which states:

> "(a) Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation."

This constitutional provision does not identify *who* may take private property. As a result, the grant of authority to particular entities comes from the Legislature. "In 1975, as the culmination of a multiyear effort to update and reorganize California's eminent domain statutes into a comprehensive statutory scheme, the Legislature enacted a new, lengthy, and detailed Eminent Domain Law. (Stats. 1975, ch. 1275, §§ 1–5, pp. 3409–3466.)" (*Property Reserve, Inc. v. Superior Court* (2016) 1 Cal.5th 151, 183.) A 1975 report of the California Law Revision Commission is useful to understanding the Eminent Domain Law because it contains the commission's comments to each section. (See The Eminent Domain Law (Dec. 1975) 13 Cal. Law Revision Com. Rep. (1976) pp. 1001-1512 (*1975 Report*).)

*1.      Eminent Domain Power*

Part of the Eminent Domain Law is codified at sections 1230.010 through 1273.050. Section 1240.010 provides the power of eminent domain may be exercised to acquire property *only for a public use*. Also, the power may be exercised "*only by a*

10

*person authorized by statute* to exercise the power of eminent domain to acquire such property for that use." (§ 1240.020, italics added.) The Law Revision Commission's comment to this section states that "[p]rivately owned public utilities may condemn for utility purposes. Pub. Util. Code §§ 610–624; Pub. Res. Code § 25528." (*1975 Report, supra*, p. 1081.)[4]

Public Utilities Code section 610 states: "This article applies only to a corporation or person that is a public utility." The comment states this section makes clear that Article 7 extends the right of eminent domain only to public utilities as defined in Public Utilities Code section 216 and not to entities that are not subject to regulation and rate control. (*1975 Report, supra*, p. 1311.) The definition of "public utility" includes every electrical corporation. (Pub. Util. Code, § 216, subd. (a)(1).) " 'Electric corporation' includes every corporation or person owning, controlling, operating, or managing any electric plant for compensation within this state." (Pub. Util. Code, § 218, subd. (a).) " 'Electric plant' " includes all property that facilitates the transmission or delivery of electricity for light, heat, or power. (Pub. Util. Code, § 217.) It is undisputed that the transmission lines crossing the Property are part of an "electrical plant" and that Edison is an "electrical corporation" and, thus, a "public utility." (Pub. Util. Code, §§ 216, subd. (a)(1), 217, 218, subd. (a).)

Consequently, Edison also is a "public utility" for purposes of Public Utilities Code section 610 and the eminent domain provisions in Article 7. Public Utilities Code section 612 states: "An electrical corporation may condemn any property necessary for the construction and maintenance of its electric plant." Therefore, Edison is a "person authorized by [Article 7] to exercise the power of eminent domain" as that phrase is used in section 1240.020.

---

[4] Public Utilities Code sections 610 through 624 form article 7 of chapter 3 of part 1 of division 1 of the Public Utilities Code (Article 7).

## 2. Requirement for a Resolution of Necessity

Robinson contends Edison is a "public entity" for purposes of the Eminent Domain Law and, therefore, its governing board was required to adopt a resolution of necessity before initiating the lawsuit to condemn an easement on the Property.

Section 1240.040 provides: "A *public entity* may exercise the power of eminent domain only if it has adopted a resolution of necessity that meets the requirements of Article 2 (commencing with Section 1245.210) of Chapter 4." (Italics added.) Similarly, section 1245.220 provides: "A *public entity* may not commence an eminent domain proceeding until its governing body has adopted a resolution of necessity that meets the requirements of this article." (Italics added.) " 'Public entity' includes the state, a county, city, district, public authority, public agency, and any other political subdivision in the state." (§ 1235.190.) Under a literal interpretation of this definition, Edison, an investor-owned public utility, is not a public entity and, as a result, is not required to adopt a resolution of necessity. This literal interpretation is supported by the statutory definition of "person" which lists "any public entity, individual, association, organization, partnership, trust, limited liability company or corporation." (§ 1235.160.) Because "public entity" and "corporation" are listed separately, section 1235.160 implies that a public entity and a corporation are different things.

"The plain meaning of the words of a statute may be disregarded only when the application of their literal meaning would (1) produce absurd consequences that the Legislature clearly did not intend or (2) frustrate the manifest purposes that appear from the provisions of the legislation when considered as a whole [along with relevant] legislative history." (*Merced Irrigation Dist. v. Superior Court* (2017) 7 Cal.App.5th 916, 924.) As explained below, a literal interpretation of the term "public entity" does not produce an absurdity in the context of this case and does not frustrate the purposes of the Eminent Domain Law.

One consequence of deeming a privately owned public utility to be a "public entity" with both the obligation and the authority to adopt a resolution of necessity is identified in subdivision (a) of section 1245.250, which states: "Except as otherwise provided by statute, a resolution of necessity adopted by the governing body of the public entity pursuant to this article conclusively establishes the matters referred to in Section 1240.030." (E.g., *Israni v. Superior Court* (2001) 88 Cal.App.4th 621, 645 [city's resolution of necessity was conclusive evidence of the public interest and necessity of acquiring the property].) Section 1240.030 requires three elements be established before the eminent domain power is exercised. First, the public interest and necessity require the project. (§ 1240.030, subd. (a).) Second, the project is planned or located so it will be most compatible with the greatest public good and the least private injury. (*Id.*, subd. (b).) Third, the property sought to be acquired must be necessary for the project. (*Id.*, subd. (c).) Giving a privately owned utility, which is not politically accountable like a public entity, the authority to make its own determination about the public necessity of the project and the property being condemned *and* receive the benefit of the presumption contradicts the comment to section 1240.030, which states: "Condemnors other than public entities have the burden of proof on the issue of necessity under Section 1240.030." (*1975 Report*, *supra*, at p. 1082.) This statement implies that nonpublic entities with the power to condemn must go to court and prove the three elements in section 1240.030 are satisfied without the benefit of the conclusive presumption in section 1245.250. Therefore, we conclude it is not absurd and does not frustrate a purpose of the Eminent Domain Law to conclude an investor-owned utility is not required to adopt a resolution of necessity before commencing an eminent domain proceeding. (See *Merced Irrigation Dist. v. Superior Court*, *supra*, 7 Cal.App.5th at p. 924.) The interests of property owners are protected by requiring the nonpublic entity to

13

prove in court by a preponderance of the evidence that section 1240.030's requirements are satisfied.

Robinson relied on *Barham v. Southern California Edison Co.* (1999) 74 Cal.App.4th 744 (*Barham*), a case in which the landowners sued Edison for damages sustained in a wildfire allegedly caused by a failure in Edison's overhead power line equipment. (*Id*. at p. 747.) After a jury trial, the landowners were awarded damages on their causes of action for negligence, nuisance, and trespass, but judgment was entered for Edison on the inverse condemnation cause of action. (*Ibid*.) Both sides appealed, and the Fourth District concluded the trial court erred when it determined there had been no taking for a public use. (*Id*. at p. 751.)

In *Barham*, the Fourth District stated the landowners needed to "prove that a public entity has taken or damaged their property for a public use" to prevail on their inverse condemnation claim. (*Barham*, *supra*, 74 Cal.App.4th at p. 751.) Accordingly, the court addresses "whether [Edison] was a 'public agency' that damaged the [landowners'] property for a 'public use.' " (*Id*. at pp. 751–752.) Edison argued it was "a privately owned public utility, not a public entity." (*Id*. at p. 752.) The court rejected this argument, stating that publicly owned electrical utilities had been held liable in inverse condemnation in similar circumstances and that, under the facts presented, there was no rational basis for distinguishing between publicly versus privately owned electric utilities. (*Id*. at p. 753.)

We conclude that the reasons for treating Edison as a public agency for purposes of inverse condemnation liability do not justify concluding Edison is a "public entity" required to adopt a resolution of necessity by sections 1240.040 and 1245.220. There is a rational basis for distinguishing between governmental entities and private businesses when it comes to resolutions of necessity. Private businesses should not get the benefit of the presumption discussed earlier because public entities are politically accountable and

14

private businesses are not.  Consequently, we adopt a literal interpretation of the term "public entity" (§ 1235.190) and conclude Edison is not a public entity required to adopt a resolution of necessity pursuant to sections 1240.040 and 1245.220.

### 3.  *Public Utilities Code Section 625*

The next issue we consider is whether the Public Utilities Code required Edison to obtain the approval of its regulator, the CPUC, before filing the condemnation action. Public Utilities Code section 625, subdivision (a)(1)(A) states:

> "For the purpose of this article, except as specified in paragraph (4), a public utility that offers competitive services may not condemn any property for the purpose of competing with another entity in the offering of those competitive services, unless the [CPUC] finds that such an action would serve the public interest, pursuant to a petition or complaint filed by the public utility, personal notice of which has been served on the owners of the property to be condemned, and an adjudication hearing in accordance with Chapter 9 (commencing with Section 1701), including an opportunity for the public to participate."

As a public utility, Edison is subject to Public Utilities Code section 625's requirement for an adjudication hearing and subsequent CPUC if (1) Edison "offers competitive services" and (2) the easements are being condemned "for the purpose of competing with another entity in the offering of those competitive services."  (Pub. Util. Code, § 625, subd. (a)(1)(A).)

Edison contends the requirement for CPUC approval does not apply because the easement sought is not for competitive purposes.  Similarly, Robinson states that, based on facts currently known, Public Utilities Code section 625 does not apply because this is not a competitive situation.  We agree with the parties' interpretation in the narrow context of this case—that is, the condemnation of an easement for existing transmission lines.  Thus, we conclude Edison was not required by Public Utilities Code section 625 to file a petition with the CPUC.

15

#### 4. *Environmental Review*

Robinson's writ petition argues Edison should be regarded as a public agency that is required to comply with the California Environmental Quality Act (CEQA; Pub. Res. Code, § 21000 et seq.) before commencing an eminent domain action.

CEQA applies only to "discretionary projects proposed to be carried out or approved by *public agencies*." (Pub. Res. Code, § 21080, subd. (a), italics added.) " 'Public agency' includes any state agency, board, or commission and any local or regional agency, as defined in these guidelines. It does not include the courts of the state. This term does not include agencies of the federal government." (Cal. Code Regs., tit. 14, § 15379; see Pub. Res. Code, § 21063 [definition of public agency].)[5] Thus, CEQA's definition of public agency does not include investor-owned public utilities such as Edison.

We note that if Edison had been required by Public Utilities Code section 625 to obtain CPUC approval of its proposal to condemn the easement, the CPUC would have been the public agency responsible for complying with CEQA before approving the project. In the circumstances of this case, Edison is authorized to condemn the easement without obtaining the approval of its regulator or any other agency. Because the approval of a public agency is not required, the proposed taking of an easement and subsequent maintenance activity falls outside the scope of CEQA. (Pub. Res. Code, § 21080, subd. (a).)

Our literal interpretation of CEQA's term "public agency" does not mean the proposed easement's environmental impacts will receive no scrutiny. Environmental effects must be considered by a superior court when evaluating whether the project is planned or located so it will be most compatible with the greatest public good and the

---

[5] The CEQA regulations set forth in California Code of Regulations, title 14, section 15000 et seq. are referred to as "Guidelines."

least private injury as required by section 1240.030, subdivision (b) and, if applicable, when evaluating the relative hardships pursuant to section 1255.410, subdivision (d)(2). Thus, we conclude the literal interpretation does not produce the absurd result of allowing a privately owned utility to exercise the power of eminent domain without any regard to potentially significant environmental effects. (See *Merced Irrigation Dist. v. Superior Court*, *supra*, 7 Cal.App.5th at p. 924.) Furthermore, this interpretation is not contrary to the purposes of CEQA, which was drafted to encompass only activities that require discretionary approvals from state or local agencies. (Guidelines, § 15002, subds. (b) ["CEQA applies to governmental action"], (c) ["Private action is not subject to CEQA unless the action involves governmental participation, financing, or approval"].)

## II.     PROCEDURAL REQUIREMENTS FOR PREJUDGMENT POSSESSION

### A.     Motions for Prejudgment Possession

In the standard eminent domain proceeding, the condemning entity does not take possession and title until after judgment and full payment of just compensation. (*Medical Acquisition Co., Inc. v. Superior Court* (2018) 19 Cal.App.5th 313, 323.) As an alternative to the standard proceeding, the California Constitution authorized the Legislature to "provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation." (Cal. Const., art. 1, § 19, subd. (a).) The Legislature exercised this authority by enacting section 1255.410 and related provisions that create the "quick-take" procedure that is the subject of this writ proceeding. (*Medical Acquisition Co., Inc.*, *supra*, at p. 323; *Redevelopment Agency of San Diego v. Mesdaq* (2007) 154 Cal.App.4th 1111, 1121–1122 [explaining quick take procedures], disapproved on another ground in *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1111, fn. 7.)

17

Subdivision (a) of section 1255.410 states that, after the complaint is filed, "the plaintiff may move the court for an order for possession under this article, demonstrating that the plaintiff is entitled to take the property by eminent domain and has deposited pursuant to Article 1 (commencing with Section 1255.010) an amount that satisfies the requirements of that article." The subdivision also requires the motion to contain certain information, including a notice that the defendant may file a written opposition within 30 days from the date of service. (See 7 Miller & Starr, Cal. Real Estate (4th ed. 2022) Eminent Domain, § 24:55, pp. 24-152 to 24-155 [motion for order of prejudgment possession]; 8 Witkin, Summary of Cal. Law (11th ed. 2017) Constitutional Law, § 1353, p. 945 [same]; 29 Cal.Jur.3d (2019) Eminent Domain, § 200, pp. 334–335 [same].)

The timely filing of an opposition affects the trial court's review of the motion. Subdivision (d)(1) of section 1255.410, states:

> "If the motion is not opposed within 30 days of service on each defendant and occupant of the property, the court *shall* make an order for possession of the property *if the court finds* each of the following: [¶] (A) The plaintiff is entitled to take the property by eminent domain. [¶] (B) The plaintiff deposited pursuant to Article 1 (commencing with Section 1255.010) an amount that satisfies the requirements of that article." (Italics added.)

In comparison, if a timely opposition is filed, the trial court *may* make an order for possession if it makes the foregoing findings and also finds that the plaintiff has an "overriding need" for immediate possession and that hardship to the plaintiff of denying immediate possession outweighs the hardship to the defendant of granting immediate possession. (§ 1255.410, subd. (d)(2)(C), (D).)

B.     Contentions of the Parties

Robinson's writ petition contends the reporter's transcript of the October 19 hearing demonstrates the trial court failed to determine whether the three required elements of section 1240.030 had been satisfied. In light of this contention, our

18

November 17 order scheduling Edison's informal response and Robinson's reply directed the parties to address whether the trial court found that the requirements of section 1240.030 had been satisfied and the related issues of (1) whether the doctrine of implied findings applied and (2) whether the trial court was required to make explicit findings as to the nonpublic entity's satisfaction of the requirements in section 1240.030.

Edison contends the trial court's written order specifically found that "Edison is authorized by law to take the Property by eminent domain," which necessarily includes implied findings that all requirements in section 1240.030 were met. Edison argues this interpretation is supported by the court's oral statement that "all of the criteria seems to be satisfied." Edison also contends the doctrine of implied findings applies to the court's order and there is no textual or policy-based reason to impose a requirement for express findings.

Robinson's reply argued the (1) trial court abdicated its responsibility to ensure that all the requirements of section 1240.030 had been met, (2) the doctrine of implied findings does not apply to the facts of this case, (3) there is no substantial evidence to support the implied findings, and (4) explicit findings are necessary to allow meaningful appellate review.

C.      Showing an Entitlement to Take the Property

For purposes of the writ proceeding, we assume Edison is correct in contending that Robinson's late filed opposition limits the issues properly before the trial court at the October 19 hearing to those identified in subdivision (d)(1) of section 1255.410. That provision states:

> "If the motion [seeking prejudgment possession] is not opposed within 30 days of service on each defendant and occupant of the property, the court shall make an order for possession of the property if the court finds each of the following:

> "(A) The plaintiff is entitled to take the property by eminent domain.

19

"(B) The plaintiff has deposited pursuant to Article 1 (commencing with Section 1255.010) an amount that satisfies the requirements of that article." (§ 1255.410, subd. (d)(1).)

We also assume Edison is correct in contending the issues presented in this writ proceeding are limited to those involving subdivision (d)(1)(A) of section 1255.410, which addresses Edison's entitlement to take the easement by eminent domain. Robinson has not contested Edison's deposit of probable compensation, which is a requirement of subdivision (d)(1)(B) of section 1255.410.

The first issue we address is the meaning of the phrase "plaintiff is entitled to take the property by eminent domain." (§ 1255.410, subd. (d)(1)(A).) This phrase is not defined in the Eminent Domain Law or explained in the comment to section 1255.410. One decision quoting the phrase restated it as the "right to take the property." (*City of Oakland v. Superior Court* (1982) 136 Cal.App.3d 565, 570.) That approach is consistent with the ordinary meaning of the word "entitle." Black's Law Dictionary (6th ed. 1990) states: "**Entitle**. In its usual sense, to entitle is to give a right or legal title to." (*Id*. at p. 532; see *Karl v. Jebien* (1965) 231 Cal.App.2d 769, 773 [judgment stating that plaintiff " 'is entitled to' " delivery of the deed of easement established "the rights of the parties"].) Consequently, we conclude a "plaintiff is entitled to take the property by eminent domain" (§ 1255.410, subd. (d)(1)(A)) when the plaintiff establishes it has the right under the Eminent Domain Law to take the property.

Section 1240.020 states: "The power of eminent domain may be exercised to acquire property for a particular use only by a person authorized by statute to exercise the power of eminent domain to acquire such property for that use." Edison is authorized by Public Utilities Code section 612 to condemn property necessary for the construction and maintenance of its electric plant and, therefore, is a "person authorized by statute to exercise the power of eminent domain" as that phrase is used in section 1240.020. (See pt. I.A.1., *ante*.)

20

A general grant of authority to exercise the power of eminent domain does not establish that the condemning entity "is entitled to take *the* property by eminent domain." (§ 1255.410, subd. (d)(1)(A).) "The Legislature's use of the definite article 'the' is significant because the definitive article 'the' refers to a specific person or thing. (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1398.)" (*Honchariw v. County of Stanislaus* (2013) 218 Cal.App.4th 1019, 1034.) Thus, a condemning entity with the statutory authority to exercise the power of eminent domain also must have the right to take the specific property in question to qualify as a plaintiff "entitled to take the property by eminent domain." (§ 1255.410, subd. (d)(1)(A).) The requirements for taking a particular property are set forth in section 1240.030, which states:

> "The power of eminent domain may be exercised to acquire property for a proposed project *only if all* of the following are established:
>
> "(a) The public interest and necessity require the project.
>
> "(b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury.
>
> "(c) The property sought to be acquired is necessary for the project."
> (Italics added.)

Consequently, an entity with the general authority to condemn will have the right to acquire a particular property using the power of eminent only if the three requirements of section 1240.030 are met. We note that if Edison were a public entity, it would be required to adopt a resolution of necessity pursuant to section 1240.040. Because Edison is not a public entity, it need only demonstrate that the requirements of section 1240.020 and 1240.030 have been met to establish it "is entitled to take the property by eminent domain" as that phrase is used in section 1255.410, subdivision (d)(1)(A).

"Condemnors other than public entities have the burden of proof on the issue of necessity under Section 1240.030." (*1975 Report*, *supra*, at p. 1082.) The parties agree the standard of proof is a preponderance of the evidence. (See Evid. Code, § 115.)

21

To summarize in general terms, for a nonpublic entity to qualify as a "plaintiff … entitled to take the property by eminent domain" (§ 1255.410, subd. (d)(1)(A)), the entity must demonstrate that it is "a person authorized by statute to exercise the power of eminent domain" (§ 1240.020) and must prove by a preponderance of the evidence that all the requirements in subdivisions (a) through (c) of section 1240.030 are met.

A comment to section 1255.410 states "the determination of the plaintiff's right to take the property by eminent domain is preliminary only. The granting of an order for possession does not prejudice the defendant's right to demur to the complaint or to contest the taking." (*1975 Report*, *supra*, p. 1175; see § 1255.440 [vacating an order of possession].) Although the order of possession is preliminary in nature, we conclude its preliminary nature does not relax either the standard of proof or the requirements that the condemning entity must satisfy. We have located nothing in the statutory text or the comments that reasonably support interpreting the Eminent Domain Law to allow a prejudgment taking on a lesser showing.

D.     Required Findings

Before addressing whether Edison carried its burden of proof, we consider a procedural question: Was the trial court required to make explicit findings that all the requirements in subdivisions (a) through (c) of section 1240.030 have been met?

A trial court reviewing a quick-take motion where a timely opposition has not been filed "*shall* make an order for possession of the property *if the court finds*" the entity (1) is entitled to take the property by eminent domain and (2) has deposited the probable compensation. (§ 1255.410, subd. (d)(1), italics added.)

The statutory text does not state whether the findings must be explicit (i.e., written or oral) or, alternatively, may be implicit. The parties have cited no legislative history addressing the issue. The phrase "if the court finds" was added to section 1255.410 in 2006. (Stats. 2006, ch. 594, § 3.) The summary digest of Legislative Counsel describing

22

that enactment stated: "The bill would require the court to make an order for possession if the motion is not opposed and *the court makes specified findings*." (Legis. Counsel's Dig., Sen. Bill No. 1210 (2005-2006 Reg. Sess.), italics added.) The term "specified findings" does not resolve whether the findings must be explicit or may be implicit.

Ordinarily, a statement of decision is not required when a trial court rules on a motion, even if there was an extensive evidentiary hearing. (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 294.) Consequently, as a general rule, when a trial court decides a motion, it is not required to make explicit factual findings. (*Id.* at p. 297 ["general rule that no statement of decision is required upon the ruling on a motion" applied to motion for attorney fees and costs under Fam. Code, § 271].)

Exceptions to the general rule are typically made only upon balancing " '(1) the importance of the issues at stake in the proceeding, including the significance of the rights affected and the magnitude of the potential adverse effect on those rights; and (2) whether appellate review can be effectively accomplished even in the absence of express findings.' " (*Gruendl v. Oewel Partnership, Inc.* (1997) 55 Cal.App.4th 654, 660; *Smith v. Circle P Ranch Co.* (1978) 87 Cal.App.3d 267, 278 [to provide "meaningful appellate review, express findings supporting the order imposing sanctions are desirable" even though statute did not require written findings].)

In addition, courts have determined explicit findings are necessary where the statute requires a particular finding or findings, but does not state the finding must be explicit. (E.g., *In re B.G.* (1974) 11 Cal.3d 679, 683 [mandatory finding relating to custody of a child]; *Rodriguez v. Brill* (2015) 234 Cal.App.4th 715, 726 [phrase "unless the court finds" in § 473, subd. (b) interpreted to require an explicit finding].) In *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, this court concluded the statutory "phrase 'the court shall make findings' requires the court to make express findings—that

23

is, findings stated in words, either in writing or orally on the record." (*Id*. at p. 1050 [interpreting Fam. Code, § 2030, subd. (a)(2)].)

In the context of this case, we conclude the property rights being taken from Robinson are significant. Also, the potential adverse effects on those rights, which includes the widening of the existing roadways to 16 feet and the clearing of the 50-foot easement under the transmission lines, are substantial and not quickly reversed or remediated. In addition, Edison's original moving papers filed by Edison did not acknowledge (1) findings that the requirements in section 1240.030 had been satisfied were necessary and (2) Edison had the burden of proof. These omissions add to the uncertainty of whether the trial court considered and found those statutory requirements had been met. For instance, the trial court may have accepted Edison's initial papers as setting forth all of the applicable criteria that needed to be satisfied to obtain an order of prejudgment possession. The trial court's oral statement that "all of the criteria seems to be satisfied" does not resolve the uncertainty. This uncertainty makes it difficult to effectively review the trial court's decision—an uncertainty that would not exist if express findings were required.

Furthermore, in situations where a public entity is the condemning party, the requirements in section 1240.030 will have been addressed in a written resolution of necessity. In contrast, when an investor-owned company is the condemning party, the trial court is the decisionmaker that must evaluate those requirements. To assure that the trial court has, in fact, conducted that evaluation and applied the correct burden of proof, we interpret the phrase "if the court finds" (§ 1255.410, subd. (d)(1)) to require explicit findings that each of the three elements in section 1240.030 have been proven by the condemning party. The explicit findings may be made in writing or orally on the record. (See *In re Marriage of Morton*, *supra*, 27 Cal.App.5th at p. 1050.) This interpretation places property owners who have their property condemned by a nonpublic entity in a

24

similar position to owners who have their property condemned by a public entity. The former will have explicit findings from the court that the requirements of section 1240.030 are satisfied and the latter will have explicit findings in a resolution of necessity.

E. Substantial Evidence

We next consider Robinson's argument that, even if the doctrine of implied findings applied, findings that the proposed easement satisfied section 1240.030's requirements cannot be inferred because such findings are not supported by substantial evidence. We agree with this argument. Under the doctrine of implied findings, an appellate court "presumes the trial court made all necessary findings supported by substantial evidence." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.) Thus, a finding can be inferred only if it is supported by substantial evidence.

Here, we cannot infer the trial court found the proposed easement satisfied section 1240.030's requirements because the record does not contain substantial evidence that necessity requires (1) the roadway easement to be 16 feet wide , (2) the clearing of the 50-foot wide easement under the transmission lines, or (3) giving Edison the right to move or relocate guy wires and anchors, crossarms, and other physical fixtures onto the Property . (§ 1240.030, subd. (a) [necessity requires the project].)

Payne's declaration does not address these points and, moreover, implies that the Property's existing roadways would provide Edison adequate access to the transmission lines because those roadways have been used in the past. Calemmo's declaration asserted: "The most feasible way to inspect, maintain, repair, and operate the Transmission Lines are via a 17,324 square foot aerial transmission line easement and a 16-foot wide access easement from an existing driveway on the Parcel." Calemmo's opinion about a 16-foot wide access easement being most feasible does not constitute

25

substantial evidence because there are no facts in her declaration or elsewhere in the record to support her opinion to justify an easement of that width. (See *Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 [opinion based on assumptions of fact without evidentiary support has no evidentiary value].) Similarly, the evidence presented by Edison does not address the need to locate physical fixtures on the Property or the need to clear the easement under the transmission wires.

The absence of substantial evidence on these aspects of the easement are sufficient to carry Robinson's burden of showing prejudicial error. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [appellant bears the burden of affirmatively demonstrating prejudicial error].) In other words, Robinson has established prejudice by showing that there is a reasonable probability of a more favorable result would have been reached. (See *In re Marriage of Morton*, *supra*, 27 Cal.App.5th at p. 1051 [test for establishing an error was prejudicial].)

F.     Further Proceedings

Because this opinion clarifies the showing Edison must make to be entitled to an order of prejudgment possession, the further proceedings conducted below should allow Edison to file an amended motion with additional supporting evidence supporting the scope of the easement requested or, alternatively, narrowing its scope. In addition, Robinson should be allowed to file an opposition to the amended motion along with supporting evidence before the trial court decides the matter.

**DISPOSITION**

Let a peremptory writ issue directing the Kern County Superior Court in case No. BCV-22-101535 to (1) vacate its October 19, 2022 order of prejudgment possession and (2) conduct further proceedings involving an amended motion for order of prejudgment possession that are not inconsistent with this opinion.

26

In the interests of justice and to prevent further delays, this decision shall be final as to this court immediately.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)  Based on this order of finality as to this court, the remittitur will issue immediately should the parties so stipulate.  (Cal. Rules of Court, rules 8.272(c)(1) & 8.490(d).)

As the prevailing party to this proceeding, Robinson is entitled to costs under California Rules of Court, rule 8.493.

FRANSON, Acting P. J.

WE CONCUR:

PEÑA, J.

SNAUFFER, J.